441 P.2d 264

**STATE of Arizona, Appellee,**

v.

**Therman McGRIFF, Appellant.**

**No. 1 CA–CR 140.**

Court of Appeals of Arizona.

May 22, 1968.

---

**500**

Darrell F. Smith, Atty. Gen., Carl Waag, Asst. Atty. Gen., for appellee.

Craig, Contreras & Bernstein, by Irwin L. Bernstein, Phoenix, for appellant.

DONOFRIO, Judge.

This is an appeal by Therman McGriff from a criminal conviction for breaking into a coin-operated contrivance as prohibited by A.R.S. § 13–676. Defendant was charged with this crime, and by addendum to the information, the County Attorney alleged that defendant had a prior conviction of two counts of burglary by mechanical means, felonies. This allegation was made to seek the increased punishment provided for by A.R.S. § 13–1649. Defendant received a sentence of not less than five years nor more than ten years in the state prison.

The facts pertinent to this appeal are as follows: On February 12, 1966, some time between 10:00 p.m. and 6:15 the following morning a telephone located at 43rd Avenue and West McDowell Road had been broken into and looted. The telephone was found broken apart and the inner parts scattered around on the ground. Approximately $43.-00 was taken. The key piece of evidence was a small yellow plastic part from the inside workings of the telephone upon which was found defendant's palm print.

At the trial defendant testified that on the night of February 12, 1966 he was driving on West McDowell Road, had car trouble, and went in search of a telephone so he might obtain help. He saw the telephone in question, which he asserts had already been torn apart. He testified he could not recall whether or not he picked up anything at the scene. He admitted he had a prior conviction of Burglary by Mechanical Means, which was the title of the offense alleged in the addendum, and stated that because of his record he did not report to the police that a telephone had been broken into. The officers testified at the trial that he denied that he had been at the scene of the crime. There was conflicting testimony as to whether or not the officers had told him of the palm print.

Defendant bases his appeal on three grounds: First, that the circumstantial evidence was insufficient to support conviction because there was a reasonable hypothesis of innocence; second, that conviction under A.R.S. § 13–676 for the first time precludes any increased penalty under A.R.S. § 13–1649; and third, that the trial court erred in not granting a hearing out of the presence of the jury on the voluntariness of certain statements made by defendant.

## SUFFICIENCY OF EVIDENCE

The most significant piece of evidence in the State's case is the palm print on the plastic part of the telephone works. Defendant contends that the print, standing alone, cannot be sufficient to convict of a crime. Further, it is urged that in Arizona if in a circumstantial evidence case there

exists a reasonable hypothesis of innocence, then the Court must direct a verdict for the defendant.

In support of his position, defendant cites many cases from other jurisdictions where the only evidence against a defendant was fingerprints taken from the scene of the crime. In these cases the courts use the language that merely because the fingerprints are found at the scene, the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused. The prints in these cases were found in public places where the defendants may have been present as customers or employees and may have innocently left the prints where found. It is to be noted in the instant case, however, that the prints were found not in a place exposed to the public, but in a place concealed until after destruction of the telephone. In addition, the circumstances are much stronger here because the palm print was found on the small object and the jury may well have determined it to be highly unlikely that such a small piece of plastic would bear the palm print of a person who innocently picked it up. They may have felt that a palm print would be more likely to be left by a person hitting and tearing up the telephone.

Defendant's contention is that the evidence does support a conclusion of innocence if his testimony is believed; i. e., that he came along after the telephone was looted and possibly picked up the piece of plastic at the time. Defendant states that since the evidence could be so interpreted, the law in Arizona dictates that no conviction can be had. He relies on the case of State v. Andrade, 83 Ariz. 356, 321 P.2d 1021 (1958), which stated:

"To warrant a conviction on circumstantial evidence alone, the evidence must be consistent with guilt and inconsistent with every reasonable hypothesis of innocence. * * *" 83 Ariz. at 359, 321 P. 2d at 1022.

The Supreme Court of Arizona has recently explained the doctrine of reasonable hypothesis of innocence in the case of State v. Green, 103 Ariz. 211, 439 P.2d 483 (decided April 3, 1968). We feel that the view expressed in that case, when applied to the instant case, is determinative of the issue created by defendant. The Court said:

"Defendant contends that the verdict of guilty against him was based solely on circumstantial evidence and was not inconsistent with every reasonable hypothesis of innocence. In addition, he contends that the verdict was contrary to the weight of the evidence. The record supports defendant's contention that the evidence against him was entirely circumstantial. *He argues that if after an examination of all the reasonable inferences that can be drawn from the evidence an inference of innocence exists then his motion for a directed verdict should have been granted. We do not agree.* We have consistently held in the past that because of the dangers that lurk in a conviction based solely on circumstantial evidence an instruction must be given to the jury that 'the evidence must not only be consistent with guilt but inconsistent with every reasonable hypothesis of innocence.' State v. Bearden, 99 Ariz. 1, 3, 405 P.2d 885; State v. Tigue, 95 Ariz. 45, 47, 386 P.2d 402. However, *in the Bearden case we noted that it was the function of the jury to decide what reasonable inferences could be drawn from the evidence.* State v. Bearden, 99 Ariz. at 3, 405 P.2d at 886. * * *" (Emphasis supplied.)

The instant case went to the jury which had been properly instructed as to the "reasonable hypothesis of innocence" doctrine. It would not have been proper to have directed a verdict for defendant. It was the function of the jury to decide what reasonable inferences could be drawn from the evidence. The question of any reasonable hypothesis of innocence was resolved against defendant by the jury and will not be disturbed on appeal.

### VOLUNTARINESS OF STATEMENTS

Defendant urges that the trial court erred in denying his request for a hearing on the

voluntariness of certain statements made by him, citing the requirements of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. 2d 908, 1 A.L.R.3d 1205; State v. Owen, 96 Ariz. 274, 394 P.2d 206 (1964); and Miranda v. State of Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

The court assigned as a basis for its refusal the fact that the defendant on the stand had denied that he was ever interrogated, thus doing away with the need of a hearing. State v. Armstrong, 103 Ariz. 280, 440 P.2d 307 (decided by Supreme Court, May 16, 1968, opinion on rehearing). The transcript is not clear as to whether defendant's denial of the interrogation referred just to a particular subject matter in the conversation or the entire interrogation itself. We set forth the testimony of defendant on this point:

"A   The only thing they ever asked me— well, when they took me to the, in the interrogation room, they just said, they asked me something about telephones being burglarized.   And then, he said, 'Wait a minute.   Before we say anything else, let me advise you of your Constitutional rights.'

"Q   But, you don't remember them telling you they had prints on you?

"A   No, they talked to me on the way down, but they were talking about different things.   And one of the officers, he tried to get smart.   I don't know, he made some kind of wisecrack about when we got to the police station and they fingerprinted me, Officer Garcia, I think is his name, the one that was here yesterday.

"Q   You don't recall Officer Stidman asking you, 'How do you explain that your fingerprints were on the inside of the 'phone?' and explained the way the identification worked on fingerprints?

"A   No, he didn't even interrogate me."

At a later point defendant testified:

"Q   Did you make any explanation to the officers how your prints could have gotten on there?

"A   They never did interrogate me." . If defendant was not referring to the entire conversation, then the court was in error in its assumption that defendant denied ever being interrogated at all.   We do not feel it necessary to pass upon this point as there is, aside from this, a valid basis for denying the request for a hearing on voluntariness.

After the prosecution rested, the only evidence put on by the defense was the testimony of the defendant himself.   It was the last answer of defendant's testimony on direct in his case in chief that introduced the question of the interrogation involved.   We shall set forth in sequence the testimony at this point which shows that after introducing the subject matter defendant answered questions pertaining to the subject without ever making any objection.   Neither did he request a hearing as to voluntariness.   Defendant testified:

"A   Well, when the police officers had came to my grandfather's house looking for me and we went to the police station, well, they had told my grandfather they wanted me to register as an ex-convict. And I went and registered. *And then, they took me to the interrogation room and asked me about some telephones on McDowell.*   (Emphasis supplied.)

"MR. ESSER:   That is all I have.

"CROSS EXAMINATION

"BY MR. LIM

"Q   Mr. McGriff, you say that the detectives picked you up and took you down to the interrogation room, is that right?

"A   Yes.

"Q   Did you explain to them at that particular time that you had been out there and seen the 'phones broken?

"A   No.

"Q   And do you recall being out there at that particular time?

"A   Did I recall?

"Q   Yes.

"A   Well, when they started asking me about it, well, I knew I had seen the telephones tore up.

"Q   Now, did they mention to you that they had your fingerprints on part of the 'phone?

"A   No.

"Q   They didn't mention it?

"A   I can't say for sure because I don't remember, but I don't think they did.

"Q   Do you recall having the conversation with Sgt. Stidman in the Detective Bureau on the 18th day of February down in their Detective Bureau?   There were two officers at that time?

"A   Yes, there was two officers.

"Q   Do you recall Stidman asking you were you out on West McDowell on the 12th and 13th. and do you recall telling him, 'No, man, the first time I was out there was today.   They can't be mine.   I ain't been out there'?

"A   No.

"Q   You don't recall that?

"A   No."

Thereafter defendant answered many other questions on cross-examination, at times referring back to the interrogation and giving his version as to what was said.   At no time did he interpose an objection.   His redirect consisted of only one question, again referring back to what was said to the officers, to-wit:

"BY MR. ESSER

"Q   Regardless, Therman, of what was said when the officers picked you up, did you at all times deny breaking into that telephone?

"A   Yes.

"MR. ESSER:   That is all I have."

It wasn't until after defendant rested his case that he made a motion for mistrial, assigning as his reason therefor that the prosecutor had "laid foundational impeaching questions which under Miranda would pertain to statements of the defendant and would be inadmissible unless there has been a showing of voluntariness".   The motion was denied, as was the request for a hearing, and the police officer was allowed to testify on rebuttal that defendant had been asked about his prints being at the scene and had said they couldn't be his because he hadn't been there.

■■   The right to a hearing on voluntariness is absolute.   *Owen,* supra;   State v. Armstrong, 103 Ariz. 174, 438 P.2d 411 (1968).   (Supplemented by an opinion on rehearing, 103 Ariz. 280, 440 P.2d 307, decided May 16, 1968).   We believe, however, that the right to such a hearing may be waived.   In State v. Anderson, 96 Ariz. 123, 392 P.2d 784 (1964), the Supreme Court recognized that there could be a waiver of the constitutional right to counsel.   See also opinion on rehearing *Armstrong,* supra. Waiver as defined by our Supreme Court in State v. Thompson, 68 Ariz. 386, 206 P.2d 1037 (1949) is a voluntary relinquishment of such right.

■   Bearing in mind that the courts indulge   every   reasonable   presumption against the waiver of fundamental constitutional rights, *Anderson,* supra, we again look at the facts of this case.   It was the defendant who in his case in chief introduced the evidence that the officers had taken him to the police station interrogation room and asked him questions about the "telephones on McDowell".   Thereafter he testified at length regarding the interrogation, giving his version of the matter. Even assuming defendant did not intend to open the subject matter and invite questions, he could have raised an objection at any time, but failed to do so until after he had testified at length regarding the conversation and rested his case.   Generally a right is waived where fair opportunity has been given to raise the question and the person fails to exercise it.   *Thompson,* supra.   Unlike the situations in *Anderson* and *Thompson,* there is nothing in this record but that the defendant acted voluntarily and his conduct was such as to warrant the conclusion that he relinquished the right to a voluntariness hearing.   It was he who opened the field and gave his evidence of the interrogation.   It was proper rebuttal for the officer to give his version of the interroga-

**504**

tion. We find no error in the Court's ruling.

## SENTENCE AND PRIOR CONVICTION PENALTY

Defendant has raised the question regarding the construction of A.R.S. § 13-676 as to whether it contains a "built-in prior conviction provision" to the exclusion of the general increased punishment statute. § 13-676 reads:

"A person who, with intent to commit grand or petty theft, enters, breaks into, or attempts to enter or break into any coin-operated vending machine or other coin-operated contrivance, apparatus or equipment used for the purpose of providing lawful amusement, sales of goods or other valuable things, or telecommunications, when the conduct or punishment is not otherwise provided, is guilty of a felony, except that in the case of a first offender, the court may in its discretion declare the offense to be a misdemeanor."

By making the violation of the statute a felony and then providing that in the case of a first offender the court may in its discretion declare the offense to be a misdemeanor, defendant contends the Legislature intended this section to carry its own prior conviction penalty and therefore § 13-1649, which is the general statute on increased punishment, does not apply.

▮ Section 13-676 approaches the increased punishment for recidivists concept differently than most of our statutes. Ordinarily the statute provides for a more severe punishment on conviction of second or subsequent offenses. In such event the statute, being highly penal, is to be strictly construed. Here, however, the Legislature has declared that the person committing the crime is guilty of a felony and has provided that the court in its discretion may declare the offense a misdemeanor in the case of a first offender. In other words, the statute gives the court the prerogative of reducing the crime in certain circumstances ·rather than increasing it if the opposite circumstances are true.

▮ In construction of statutes, fundamental rule is to ascertain and give effect to the intention of the Legislature, as expressed in the statute. In arriving at the intention of a statute, resort may be had to words, context, subject matter, effects and consequences, spirit and reason of the law and other acts in pari materia. Isley v. School District No. 2 of Maricopa County, 81 Ariz. 280, 305 P.2d 432 (1956).

We have made a general check of several relatively recent statutes containing what could be termed a "built-in prior conviction provision" and find that although the wording of the several statutes may vary, they seem to bear out one central pattern. This pattern is that in order to convert a possible misdemeanor to a felony, or in order to increase the punishment, the increase being provided for in the specific statute rather than relating to the general statute, the prior conviction must be either of the same offense or of an offense of the same type or character. To name a few, A.R.S. § 13-672 as amended, which is a recent joy riding statute, makes the offense a misdemeanor and provides that the person who commits a second or subsequent violation of "this section" is guilty of a felony. § 13-318, subsec. B, a recent fraud upon a business establishment law, likewise makes the offense a misdemeanor and provides that if the person has been previously convicted of a violation of the section he is guilty of a felony. To the same general effect, making a repeater liable to more severe punishment, see § 28-692.01 and § 28-693, relating to driving while under the influence of intoxicating liquor or drugs and reckless driving. § 13-992, subsec. B, loitering, provides penalties of a misdemeanor, but states that if a person has been previously convicted of the same offense or of other enumerated offenses which appear to be of the same general character, then the person shall be punished by imprisonment for not less than one nor more than five years without the possibility of parole until the minimum is served.

We believe in this instance it was the intent of the Legislature to follow this concept of permitting different treatment by the court of a second or subsequent offender of the same crime. A reading of the statute will show it is all in one sentence and that the words "first offender" relate to the description of the crime which precedes it in the forepart of the sentence. These are not words of art which can be considered apart from the other portion of the sentence and given a different meaning. The plain import of the wording is that the discretion is given the court in the case of a person who is for the first time committing the crime set forth in the wording of the statute. We would hold that the Legislature intended to give the court discretion to declare the offense a misdemeanor only if the person is not guilty of a second or subsequent violation of the same offense.

The forepart of the statute contains a description of the acts necessary for a violation of the statute. Just before the clause fixing the penalty are the words "when the conduct or punishment is not otherwise provided". This would indicate that the Legislature recognizes that a person who commits an offense under the statute might be subject to the provisions of other statutes which he could either be prosecuted under, or in the case of an increased punishment statute, be given a heavier sentence. By providing as they have, it is clear to us that the Legislature did not intend to make the violation of the statute and the penalty therein exclusive of all other statutes. We would hold that a person guilty of the violation of § 13–676 who has a prior conviction not necessarily of the same offense, is also subject to the increased punishment provisions of § 13–1649. In fact, this increased punishment statute is held to be mandatory. State of Arizona v. Valdez, 48 Ariz. 145, 59 P.2d 328 (1936); State of Arizona v. Myers, 59 Ariz. 200, 125 P.2d 441 (1942).

We next discuss the record as it relates to the prior conviction.

An examination of the minutes at the time of sentence, as well as the formal judgment, reveals that there is no adjudication or finding by the court that the defendant was guilty of having a prior conviction. The minutes read:

"A Jury has found you guilty of the charge of Theft from a coin operated contrivance, a felony, as charged in the Information. It is the judgment of the Court you are guilty of Theft from a coin operated contrivance, a felony, as charged in the Information. * * *"

The wording of the formal written judgment was to the same effect and made no mention of the prior conviction.

The prior conviction was alleged in an addendum to the information which was a separate instrument signed by the County Attorney and attached to the information which charged the main offense. The information itself made no mention of prior conviction. The addendum alleged that defendant was convicted of Burglary by Mechanical Means, Counts I and III on January 5, 1962 in Cause No. 38424 Maricopa County. Defendant's testimony on this point reads:

"MR. ESSER: Q Have you ever been convicted of a felony before?

"A Yes, burglary by mechanical means.

"Q When was that?

"A About December of 1961.

"Q Did you after that conviction serve a term in the State Prison?

"A Yes, I was sentenced to twelve–fourteen, but after I was there about eighteen months they commuted seven years of the time and I did the remainder of it.

"Q What time did you get out of prison?

"A January 11th of last year.

"Q Of 1966?

"A Yes."

During the trial prior to discharging the jury, the court instructed the jury that the defendant having admitted the prior con-

viction they were to return a verdict of guilty of the prior conviction. There was no objection by defendant. This was proper procedure as the Supreme Court has held that where the defendant admits the prior conviction during cross-examination the court need not submit the question to the jury. State v. Seymour, 101 Ariz. 498, 421 P.2d 517 (1966); State v. Armstrong, supra. The record, however, is not clear as to whether defendant's admission was to the prior conviction specifically set forth in the addendum, or whether it was of another offense. Since the point has not been raised in the briefs, it can be assumed that a checking of File #38424 would determine this fact. There is, however, one serious defect and that is that there must be an adjudication of the fact of the prior conviction by the court before sentencing under the prior conviction statute. Montgomery v. Eyman, 96 Ariz. 55, 391 P.2d 915 (1964); State v. Robinson, 6 Ariz.App. 419, 433 P.2d 70 (1967); State v. Palmer, 5 Ariz.App. 192, 424 P.2d 840 (1967).

■ The question arises whether the court in adjudging the defendant guilty of the crime of "theft from coin operated contrivance, a felony, *as charged in the Information*" also included adjudication of the prior conviction. We think not. No mention of the prior conviction was made in the information charging the theft. For an adjudication there must be some pronouncement made by the judge in open court and the words which the court used in this instance merely related to the charge and cannot be treated as a pronouncement of the fact of prior conviction alleged in the addendum.

The sentence of five to ten years meted out to defendant is greater than the maximum allowed by law for the charged offense of theft from a coin-operated contrivance, thus rendering illegal the sentence as imposed. Haney v. Eyman, 97 Ariz. 289, 399 P.2d 905 (1965); State v. Anders, 1 Ariz.App. 181, 400 P.2d 852 (1965). At this point my esteemed colleagues and I disagree on the remand order to be entered

herein. In the specially concurring opinions which become the majority opinion on this question, they have held that the admission of prior conviction cannot now be inquired into to determine if it relates to the one charged in the addendum to the information. In this respect I dissent. I would hold that the matter of sentence is divisible from the remainder of the case and, under the circumstances, it is within the power of the trial court to correct any deficiency in the record. This is especially true in view of the fact that the trial judge had already directed the jury concerning the prior conviction, and all that remained was for the court to make a proper determination that defendant admitted the prior conviction and to record the determination in the judgment. Defendant not having begun to serve his sentence, as he was admitted to bail on a writ of probable cause, and it appearing that the court through inadvertence failed to make the adjudication of prior conviction, I would hold that the sentence should be vacated and the cause remanded to the trial court for the proper entry of a valid judgment on the issue of prior conviction and for resentencing within the limits of the law. In order to do this it is necessary for the defendant to be brought before the court.

The sentence is vacated and the case remanded with directions that the defendant be brought before the court for resentencing in accordance with this and the specially concurring opinions. The cause is otherwise affirmed.

STEVENS, Judge (specially concurring).

I concur in the opinion except in relation to the suggestion that the trial court now has the power to adjudge the defendant guilty of the offense charged together with the prior conviction which was set forth in the addendum to the information, and to so sentence him.

■ The details with reference to the allegation of prior conviction are adequately set forth in the opinion. The quoted admissions of the defendant establish that the

named offense occurred in the State of Arizona in that he served time in the Arizona State Prison, but the defendant's admissions do not establish the county wherein the judgment of guilt was entered, nor the particular date. In my opinion, the recidivist statute may not be placed in operation by merely showing that there has been a prior conviction, but the admission of the defendant or the evidence in support of the addendum must establish the particular prior conviction pleaded in the addendum. The admissions of the defendant during his testimony were close, but in my opinion not close enough. In my opinion, it would have been appropriate for the County Attorney to ask additional questions to establish the identity of the conviction admitted and the conviction pleaded. This was not done.

The opinion states "(t)he record, however, is not clear as to whether defendant's admission was to the prior conviction specifically set forth in the addendum, or whether it was of another offense". With this statement I concur.

The opinion proposes a resentencing including a proper judicial determination as to the prior conviction. With this I am in disagreement. The State and the defendant have both rested. The jury has been discharged. In my opinion, it is now too late to supplement the evidence which was presented at the trial, evidence designed to establish the prior conviction or to establish that the prior conviction which the defendant admitted was in fact the same prior conviction set forth in the addendum. Under these circumstances I withhold comment as to whether the trial judge, having omitted to enter a proper judgment of guilty with a prior conviction, could now revise the record even though the defendant has not commenced the service of his sentence, he being on bond pending appeal.

In my opinion the final result of the appeal in the cause should be to vacate the sentence only and to remand this cause for resentence under a judgment of guilt as to the offense charged, without the use of the prior conviction alleged in the addendum,

the maximum permissible sentence to be the five-year maximum specified in the statute in question.

CAMERON, Chief Judge (specially concurring).

While I fully concur in the Court's opinion affirming the appeal and remanding the cause for resentencing except as to the question regarding prior conviction, I join Judge STEVENS' specially concurring opinion that the defendant be sentenced within the limits of the crime charged in the information, without regard to the prior conviction.