441 P.2d 557

**STATE of Arizona, Appellee,**

v.

**John E. JOHNSON, Appellant.**

**No. I CA–CR 148.**

Court of Appeals of Arizona.

June 4, 1968.

Rehearing Denied July 3, 1968.

Review Denied Sept. 17, 1968.

Darrell F. Smith, Atty. Gen., by Carl Waag, Asst. Atty. Gen., for appellee.

Richard E. Barnsback, Kingman, for appellant.

STEVENS, Judge.

The basis of this appeal is asserted fundamental error in the trial of this cause.

The defendant was charged with grand theft in relation to money and other items of personal property, the money being the item of value. He was represented at the jury trial by experienced appointed counsel. The defendant took the stand and testified which enables the Court to give a brief chronology of the evidence, which is not limited to the State's case alone. We do not recite all of the circumstances reflected in the record which are favorable to sustaining the judgment of guilt. On appeal the defendant was ably represented by different appointed counsel.

For a brief period of time prior to the day in question, the defendant was employed as a bartender on the 5:00 in the afternoon to 1:00 in the morning shift in a business establishment in Kingman. It was the defendant's obligation to close the bar and place the money in a place of safekeeping, a location known to defendant and the owner. There was an adjoining cafe operated by the owner and the owner's wife.

Prior to closing the bar shortly before 1:00 in the morning of the day in question, the defendant counted the money, placed it in each of two bank sacks, one sack being inside the other. There were a number of pieces of paper money including more than $50 in one dollar bills, and there was $13.93 in change. The overall total was a sum in excess of $100 required for the offense of grand theft.

Not long prior to closing time, one of the business patrons became somewhat difficult and this created a rather difficult situation for a new employee. The defendant also discovered that one of the patrons had left without paying his bar bill. The defendant urges that these unusual situations contributed to his absentmindedness.

After he had ceased serving drinks, he counted the money preparatory to closing the establishment at the 1:00 in the morning deadline. He then placed the bags and their money content in his trouser's pocket. He finished his work of persuading the patrons to leave the bar and his work in cleaning up the establishment together with making sure that the premises were secure for the night. He did not put the bags and their content in the designated place for safekeeping. After he locked the business establishment, he joined a co-employee and that employee's wife for breakfast at a Kingman restaurant. He returned to his room and later decided to go to Las Vegas to see the Judge who had granted a divorce to the defendant's former wife. So far as the record shows, the defendant was not married at the time in question. Defendant's interest in seeing the Judge was by reason of the former wife's failure to keep him advised as to the whereabouts of their children as she had been directed in the divorce decree. The day in question was the second anniversary of the divorce decree.

On the way to Las Vegas, a drive of approximately two hours of normal driving, the defendant became sleepy and stopped at a picnic area to nap. On awakening he first discovered that he had the money on his person. He started to return to Kingman but reconsidered and continued to Las Vegas believing that the owner would trust him and not be concerned.

In Las Vegas he rented a motel room, keeping the money in his personal possession. He then attempted to call the Judge and being unsuccessful, he went to a clothing store to buy a suitable vest and tie for his wear while tending bar. He testified that a suitable vest could not be purchased in Kingman. While at the clothing store he saw a jacket which he liked and purchased it. These purchases were paid for with one dollar bills using the owner's money. Defendant stated that he intended only to borrow the money since there was money due him from a former Kingman employer and from the owner, in a sum greater than the amount borrowed. He testified that after making the purchases he was again unsuccessful in reaching the Judge. The clerk in the store was an off-duty policeman to whom the defendant volunteered that he was from Eureka, California, where he had once lived, and that he had arrived in Las Vegas without clothing. The clerk followed the defendant to the motel and alerted the police who called upon him and were admitted to the motel room. No issue was made as to their entrance into the room, the testifying officer having stated in effect that the defendant voluntarily admitted them. There the purchases, the money, a radio, some groceries and a half gallon of milk were in plain sight. An officer testified that the defendant was advised as to his rights and that he freely talked with the officers. On cross-examination the officer stated that he was informed by the

**524**

defendant that the defendant was then preparing to return to Kingman, the hour being such that he could have returned before his 5:00 shift commenced.

At the trial the defendant explained that the radio, the groceries and the milk had been purchased by him in Kingman shortly before he went to work at 5:00 in the evening of the day prior to his early morning trip to Las Vegas. He also testified that he waived extradition.

■ On appeal it was urged that there was fundamental error in the failure of counsel to raise the question as to whether there was an illegal search. There was no motion to suppress. The testimony of the police officer established that the police were voluntarily and freely admitted to the room.

∴ On appeal it was also urged that there was fundamental error in that the trial court did not, on its own motion, conduct a hearing out of the presence of the jury as to the voluntariness of the defendant's statements. In questioning the Las Vegas police officers, the County Attorney expressly avoided any questions which would elicit any statements which the defendant may have made. All statements which were attributed to the defendant were initially elicited by his counsel on cross-examination of the Las Vegas police officer and then on direct examination when the defendant took the stand.

■ Our reading of the reporter's transcript indicates to us that the strategy adopted by trial counsel was knowledgeable and intentional. In our opinion there was ample evidence to establish a prima facie case without the necessity of using certain possibly objectionable evidence. It appears to us that the best defense which was available to the defendant was his own version of the matter. Had the jury believed the defendant there would have been an absence of the criminal intent essential to the offense of grand theft. We find no error under these circumstances. There are a number of legal principles set forth in our case of State v. McGriff, 7 Ariz.App. 498, 441

P.2d 264, decided 22 May 1968 and in the cases therein cited, which sustain our views in the case now under consideration.

■ The instructions which were given on the subject of circumstantial evidence followed the standard which has been established in the State of Arizona and on appeal the defendant urges that this Court depart from the Arizona rule. The Arizona Supreme Court recently restated the Arizona rule in the case of State v. Green, 103 Ariz. 211, 439 P.2d 483 (1968). It is further urged that the circumstantial evidence in the case now under consideration fails to meet the Arizona test under the reasoning set forth in the Arizona Supreme Court case of State v. Alkhowarizmi, 101 Ariz. 514, 421 P.2d 871 (1966). We are not in agreement with this contention. There was adequate evidence to support the necessary finding of an intent to permanently deprive the owner of his money.

We find no reversible error.

Affirmed.

CAMERON, C. J., and DONOFRIO, J., concur.