IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

FEB 22 2012

COURT OF APPEALS
DIVISION TWO

| THE STATE OF ARIZONA, | ) | 2 CA-CR 2010-0310 |
| | ) | DEPARTMENT A |
| Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| JOSE RAYMOND ALVAREZ, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20092296001

Honorable Jane L. Eikleberry, Judge

AFFIRMED

Thomas C. Horne, Arizona Attorney General
  By Kent E. Cattani and Diane Leigh Hunt                                    Tucson
Attorneys for Appellee


Isabel G. Garcia, Pima County Legal Defender
  By Scott A. Martin                                                        Tucson
Attorneys for Appellant

H O W A R D, Chief Judge.

¶1         After a jury trial, appellant Jose Alvarez was convicted of second-degree burglary and sentenced to five years' probation to be served concurrently with a probationary term in another case. On appeal, Alvarez contends the trial court erred by excluding third-party culpability evidence or by denying his motion for a mistrial to

formulate a new defense. He also argues the court erred by ordering restitution because he had been acquitted of the theft charge. For the following reasons, we affirm.

## Factual and Procedural Background

**¶2**        We view the facts in the light most favorable to sustaining the verdicts. *State v. Haight-Gyuro*, 218 Ariz. 356, ¶ 2, 186 P.3d 33, 34 (App. 2008). Alvarez broke into M.'s home through the back door and took items worth $16,661.49. Two water bottles not belonging to M. were discovered in her kitchen, one of which had Alvarez's DNA[1] on it. Alvarez was arrested and charged with burglary and theft by control. The jury acquitted Alvarez of theft by control, but convicted him of burglary. The court sentenced him as noted above. This appeal followed.

## Third-Party Culpability

**¶3**        Alvarez argues the trial court erred by excluding third-party culpability evidence concerning a landscaper, R., with a prior criminal record. He contends the evidence was relevant to showing the police investigation of R. was "faulty." We review the court's rulings on the relevance and admissibility of evidence for an abuse of discretion. *State v. Rutledge*, 205 Ariz. 7, ¶ 15, 66 P.3d 50, 53 (2003).

**¶4**        We first review the admissibility of third-party culpability evidence to determine whether it is relevant under Rules 401 and 402, Ariz. R. Evid. *State v. Gibson*, 202 Ariz. 321, ¶¶ 12-13, 44 P.3d 1001, 1003 (2002). "[A] defendant may not, in the guise of a third-party culpability defense, simply 'throw strands of speculation on the

---

[1]Deoxyribonucleic acid.

2

wall and see if any of them will stick.'" *State v. Machado*, 226 Ariz. 281, n.2, 246 P.3d 632, 635 n.2 (2011), *quoting State v. Machado*, 224 Ariz. 343, n.11, 230 P.3d 1158, 1172 n.11 (App. 2010). Instead, any such evidence is relevant only if it "tend[s] to create a reasonable doubt as to the defendant's guilt." *Gibson*, 202 Ariz. 321, ¶ 16, 44 P.3d at 1004.

¶5 In his opening statement, Alvarez discussed the officers' investigation into R.'s criminal history, and explained that the victim had noted R.'s presence at the home. The state objected to Alvarez's mention of R.'s criminal history, but the trial court denied the objection. After opening argument, the state renewed its objection to the admission of evidence regarding R.'s prior conviction, arguing it was not relevant, but instead simply showed R.'s bad character or criminal propensity. Alvarez argued the evidence was relevant to impeach the police officers about their investigation of the case. The court ruled that any evidence about R. was not relevant because there was no evidence to "tie [R.] to the crime" and no evidence that would "tend to create a reasonable doubt as to [Alvarez's] guilt." The court further held that even if the evidence were relevant the danger of unfair prejudice and misleading the jury outweighed any probative value. Alvarez filed a motion for reconsideration and a motion for mistrial the next day, both of which the court denied.

¶6 Alvarez provides no evidence that R. was involved in the burglary or that faulty police investigation tended to create any reasonable doubt as to his guilt. And the fact the police did not investigate R., based on his scheduled presence in the yard, does

not in any way explain how a water bottle with Alvarez's DNA on it was found in the victim's home following the burglary. Moreover, even had police discovered R.'s criminal history, it would not have been relevant due to R.'s lack of any connection to the crime. Alvarez did not offer a valid third-party culpability defense and we conclude the evidence is "no more than '[v]ague grounds of suspicion.'" *State v. Bigger*, 227 Ariz. 196, ¶ 43, 254 P.3d 1142, 1155 (App. 2011), *quoting State v. Fulminante*, 161 Ariz. 237, 252, 778 P.2d 602, 617 (1988) (alteration in *Bigger*). Thus the trial court did not abuse its discretion in finding the evidence inadmissible under Rules 401 and 402.[2]

**¶7** Alvarez relies heavily on *Machado*, 224 Ariz. 343, 230 P.3d 1158. In that case, the defendant introduced evidence that the third party had threatened the victim, had an uncontrollable temper, and did not attend a date the night of the murder. *Machado*, 224 Ariz. 343, ¶ 8, 230 P.3d at 1165. The trial court precluded other third-party culpability evidence, including that the police had obtained a search warrant related to the third party. *Id.* ¶ 9. This court reversed the conviction based on the exclusion of the third-party culpability evidence. *Id.* ¶ 1. As to the police evidence, we determined that officers' subjective beliefs are typically inadmissible, but that in that case, some of the evidence was relevant "contextual information." *Id.* ¶ 55. Here, because the record is

---

[2]Because we find the evidence was irrelevant, we need not address Alvarez's argument that the danger of unfair prejudice and misleading the jury did not substantially outweigh its probative value under Rule 403, Ariz. R. Evid. Moreover, lacking relevance, its exclusion did not violate Alvarez's Due Process right to present a defense under the United States and Arizona constitutions. *See State v. Abdi*, 226 Ariz. 361, ¶ 32, 248 P.3d 209, 216 (App. 2011) (right to present defense "subject to evidentiary rules," limited to relevant evidence).

4

devoid of any connection between the burglary and R., Alvarez never offered a valid third-party culpability defense. Any defect in the investigation into R. would not have provided contextual information regarding the burglary. Therefore, the evidence was irrelevant and *Machado* does not dictate a different result.

¶8            Moreover, we conclude that any error in the exclusion of this evidence would be harmless. *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993) (error in excluding evidence harmless when beyond reasonable doubt it did not affect verdict). Alvarez's and a female's DNA were found on separate water bottles left in the victim's house during the time the burglary occurred. The record is devoid of any explanation for their presence other than that Alvarez and an accomplice committed the burglary. And, even if R. had been involved in the burglary, that involvement would not exculpate Alvarez. R. simply could have been another accomplice, who had told Alvarez when the house would be empty. Therefore, we can say beyond a reasonable doubt that the exclusion of this evidence did not affect the verdict and, if error, was harmless. *See Bible*, 175 Ariz. at 588, 858 P.2d at 1191.

¶9            Our dissenting colleague concludes that Alvarez offered a valid third-party culpability defense. He acknowledges, however that evidence that does nothing more than raise suspicion against a class of people, *e.g.*, *State v. Dann*, 205 Ariz. 557, ¶ 36, 74 P.3d 231, 243 (2003), or reveals the bad character or criminal propensities of a person otherwise unconnected to the crime, *e.g.*, *Fulminante*, 161 Ariz. at 252, 778 P.2d at 617; *accord Machado*, 224 Ariz. 343, n.11, 230 P.3d at 1172 n.11, should be excluded. The

5

evidence here is of that kind. Our colleague also asserts that "if the evidence in question would suggest a reasonable possibility that a person other than the defendant committed the crime, it should be admitted." But Alvarez's evidence fails this test. Even if R. in some way was involved in the burglary, that would not exculpate Alvarez. As noted above, because R. could have been Alvarez's accomplice, the offered evidence does not suggest that someone other than Alvarez committed the crime.

¶10 Finally, the dissent suggests the DNA evidence in this case was not dispositive of guilt. We must disagree. Although the dissent suggests several hypothetical possibilities in which Alvarez's DNA could have been left on the water bottle, there is no factual support for them in the record, nor do they overcome the logical conclusion drawn from the evidence that Alvarez committed the burglary. Therefore, we are unpersuaded by the dissent's speculation.

¶11 Alvarez further argues the trial court should not have considered the state's objection to the third-party culpability evidence because the state did not object before trial. Alvarez argues based on Rule 15, Ariz. R. Crim. P., governing disclosures, and Rule 16.1, Ariz. R. Crim. P., governing pretrial motions, that the state was required to object at least twenty days before trial. Alvarez acknowledges he cites no criminal cases on point and instead relies on civil cases and rules of procedure. However, in a criminal case, "[a] pretrial motion in limine is merely a convenient substitute for evidentiary objections at trial." *State v. West*, 176 Ariz. 432, 442, 862 P.2d 192, 202 (1993), *overruled on other grounds by State v. Rodriguez*, 192 Ariz. 58, 64 n.7, 961 P.2d 1006,

1012 n.7 (1998). The state may object to a defendant's proposed evidence at trial and is not required to submit a written motion in advance of trial. *State v. Cramer*, 174 Ariz. 522, 523, 851 P.2d 147, 148 (App. 1992). Finally, a trial court has discretion to hear an untimely motion. *State v. Zimmerman*, 166 Ariz. 325, 328, 802 P.2d 1024, 1027 (App. 1990). The court did not err by considering the state's objection to Alvarez's proposed evidence.

¶12 Alvarez next argues the trial court erred by denying his motion for a mistrial and motion for a new trial, because it denied his right to present a defense under the Due Process Clauses of the United States and Arizona constitutions. He notes that his entire defense strategy was based on his third-party culpability defense, which was precluded, and he did not have a chance to investigate and prepare any alternate theory of defense. We review for an abuse of discretion a court's denial of a motion for mistrial. *State v. Moody*, 208 Ariz. 424, ¶ 124, 94 P.3d 1119, 1151 (2004). "A declaration of a mistrial, however, is 'the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted.'" *State v. Dann*, 205 Ariz. 557, ¶ 43, 74 P.3d 231, 244 (2003), *quoting State v. Adamson*, 136 Ariz. 250, 262, 665 P.2d 972, 984 (1983).

¶13 Alvarez may have been left with insufficient time to develop another defense strategy. But he has identified no other viable strategy he could have developed in view of his DNA having been found on the water bottle inside the house. Accordingly,

7

the trial court did not abuse its discretion by not finding that justice would be thwarted absent a mistrial. *See Moody*, 208 Ariz. 424, ¶ 124, 94 P.3d at 1151.

¶14 Alvarez relies on *State v. Petrak*, 198 Ariz. 260, ¶¶ 28-29, 8 P.3d 1174, 1182 (App. 2000), in which this court determined a duplicitous indictment "inadequately defined the charge, fail[ing] to notify [the defendant] of what evidence would be presented against him." However, Alvarez makes no claim that he was unaware of the charges against him, none of which changed during trial. The state is not required to provide notice of how it "intends to proceed or to elect theories in advance" of trial. *West*, 176 Ariz. at 443, 862 P.2d at 203. Indeed, the evidence excluded by the trial court was irrelevant to Alvarez's guilt. Therefore, the court did not err by denying Alvarez's motions for a mistrial and a new trial, because Alvarez still had the opportunity to prepare and present his defense to the charges.

## Restitution

¶15 Alvarez lastly contends the trial court erred by ordering him to pay restitution because it improperly considered the victim's emotional loss and because any losses arose from theft, of which Alvarez was acquitted, rather than burglary. "[W]e view the evidence bearing on a restitution claim in the light most favorable to sustaining the court's order." *State v. Lewis*, 222 Ariz. 321, ¶ 5, 214 P.3d 409, 412 (App. 2009).

¶16 To preserve an argument for review, the defendant must make sufficient argument to allow the trial court to rule on the issue. *State v. Fulminante*, 193 Ariz. 485, ¶ 64, 975 P.2d 75, 93 (1999) ("objection is sufficiently made if it provides the judge with

8

an opportunity to provide a remedy"). "And an objection on one ground does not preserve the issue [for appeal] on another ground." *State v. Lopez*, 217 Ariz. 433, ¶ 4, 175 P.3d 682, 683 (App. 2008). At sentencing Alvarez's counsel stated: "As to the restitution, I thought that it might be a good idea to have a restitution hearing, because we did have that split verdict. He was convicted of the burglary but not the theft by control. And I would like the opportunity to make some arguments as to that." But Alvarez did not object when the trial court imposed restitution. Nor did he object based on the court's having considered the victim's emotional loss nor argue sufficiently that the losses flowed only from the theft rather than the burglary. *See Fulminante*, 193 Ariz. 485, ¶ 64, 975 P.2d at 93. Alvarez therefore has forfeited the right to seek relief for all but fundamental, prejudicial error.[3] *See State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607 (2005) (failure to object to alleged error in trial court results in forfeiture of review for all but fundamental error).

¶17 Alvarez argues the imposition of restitution is fundamental error. "[T]he imposition of an illegal sentence constitutes fundamental error." *State v. Lewandowski*, 220 Ariz. 531, ¶ 4, 207 P.3d 784, 786 (App. 2009). However, although the trial court noted the victim's emotional loss, the amount of restitution imposed was the exact amount of economic loss the victim reported. Therefore, the court did not increase the

---

[3]Alvarez cites no authority nor do we find any supporting the proposition that he "should be excused" from objecting to the restitution order "because []he was surprised at the imposition of restitution." Instead we will follow the Arizona Rules of Evidence and Arizona cases requiring a timely and specific objection to any error. *See* Ariz. R. Evid. 103(a)(1); *Lopez*, 217 Ariz. 433, ¶ 4, 175 P.3d at 683.

award based on the victim's emotional loss and did not err, much less err fundamentally, by imposing a restitution order in the amount of the victim's loss. *See Town of Gilbert Prosecutor's Office v. Downie*, 218 Ariz. 466, ¶ 14, 189 P.3d 393, 396 (2008) (restitution limited to "amount necessary to recompense direct losses").

**¶18**        Alvarez also contends the victim's damages "did not flow directly" from the burglary, but from the subsequent theft. The state must prove by a preponderance of the evidence that except for the criminal conduct the victim would not have incurred the economic loss and that the conduct directly caused the loss. *Lewis*, 222 Ariz. 321, ¶ 7, 214 P.3d at 412. A defendant's acquittal on one offense "does not necessarily absolve him of liability for restitution" so long as the facts underlying the conviction directly caused the loss. *Id.* ¶ 9.

**¶19**        Viewing the evidence "in the light most favorable to upholding the restitution award," *id.* ¶ 15, Alvarez broke into the victim's home for the purpose of committing a theft and took her jewelry, leaving behind his water bottle. A preponderance of the evidence supports that the victim would not have incurred the economic loss of property without the facts underlying Alvarez's burglary conviction and the facts support the causal nexus between Alvarez's conduct and the victim's economic loss. *See id.* ¶¶ 7, 11.

**¶20**        Alvarez relies on *State v. Whitney*, 151 Ariz. 113, 726 P.2d 210 (App. 1985) for the proposition that a defendant's conduct in stealing a car was too attenuated from conduct of later colliding with another vehicle. However, in *Whitney*, the court

addressed the question of whether the driver of the second vehicle was a victim of the original crime, rather than whether a defendant's actions caused loss to a victim. 151 Ariz. at 114, 726 P.2d at 211. Alvarez also relies on *State ex rel. McDougall v. Superior Court*, 186 Ariz. 218, 220, 920 P.2d 784, 786 (App. 1996), in which the defendant committed civil traffic offenses in causing an accident, but then criminally left the scene of an injury accident. We held that because the defendant's criminal conduct did not cause the economic losses from the accident, he was not required to pay restitution. *McDougall*, 186 Ariz. at 220, 920 P.2d at 786. Because Alvarez's criminal conduct caused the victim's economic loss, the trial court did not err fundamentally or otherwise in ordering restitution.

### Conclusion

¶21　　　For the foregoing reasons, we affirm Alvarez's conviction and sentence.


/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge


CONCURRING:


/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge


E C K E R S T R O M, Presiding Judge, dissenting.


11

¶22        This case requires us to grapple with the distinction between admissible third-party culpability evidence that "'tend[s] to create a reasonable doubt as to the defendant's guilt,'" *Machado*, 226 Ariz. 281, ¶ 24, 246 P.3d at 636, *quoting Gibson*, 202 Ariz. 321, ¶ 16, 44 P.3d at 1004 (alteration in *Machado*), and evidence representing mere "'speculation'" that is properly excluded under the Arizona Rules of Evidence.  *Id.* n.2, *quoting Machado*, 224 Ariz. 343, n.11, 230 P.3d at 1172 n.11.  In the present case, because I find the relevance and probative value of the proffered evidence to be apparent, I respectfully dissent from my colleagues' view that the trial court properly excluded Alvarez's third-party evidence in the midst of his trial.

¶23        Our supreme court recently reaffirmed that the admission of third-party culpability evidence is governed by Rules 401, 402, and 403, Ariz. R. Evid.  *Machado*, 226 Ariz. 281, ¶ 16, 246 P.3d at 635.  Under Rule 401, "the threshold for relevance is a low one," *State v. Roque*, 213 Ariz. 193, ¶ 109, 141 P.3d 368, 396 (2006), and Rules 402 and 403 create a presumption in favor of admitting relevant evidence.  We cannot overlook that it is a jury's function to draw inferences from the evidence and determine its weight.  *State v. Godsoe*, 107 Ariz. 367, 370, 489 P.2d 4, 7 (1971); *State v. McGriff*, 7 Ariz. App. 498, 501, 441 P.2d 264, 267 (1968).  Thus, when a third-party defense is offered, it is primarily the jury's role to assess whether the evidence creates a reasonable doubt as to the defendant's guilt.  Although trial courts play a somewhat overlapping role

in evaluating the admissibility of this evidence,[4] they "must be careful not to 'bootstrap [themselves] into the jury box via evidentiary rules.'" *Machado*, 224 Ariz. 343, ¶ 43, 230 P.3d at 1174, *quoting State v. LaGrand*, 153 Ariz. 21, 28, 734 P.2d 563, 570 (1987) (alteration in *Machado*). Our courts must bear in mind that threshold determinations of admissibility go too far when the preclusion of evidence "infringe[s] upon the role of the jury and improperly insulate[s] the state's evidence from critique." *State v. Lehr*, 201 Ariz. 509, ¶ 29, 38 P.3d 1172, 1180 (2002).

¶**24**       As the majority correctly notes, we observed in *Machado* that the defendant is not entitled to "throw strands of speculation on the wall and see if any of them will stick." 224 Ariz. 343, n.11, 230 P.3d at 1172 n.11, *quoting* David McCord, *"But Perry Mason Made It Look So Easy!": The Admissibility of Evidence Offered by a Criminal Defendant to Suggest that Someone Else is Guilty*, 63 Tenn. L. Rev. 917, 984 (1996). In so stating, however, we did not mean to suggest that third-party culpability evidence must itself engender some level of certainty in the guilt of the third party to be admissible. Rather, the evidence in question must be permitted when it tends to make a reasonable-doubt defense more plausible. *See State v. Prion*, 203 Ariz. 157, ¶ 24, 52 P.3d 189, 193 (2002) (evidence must "'*tend* to create a reasonable doubt as to the defendant's guilt'"),

---

[4]*See* David McCord, *"But Perry Mason Made It Look So Easy!": The Admissibility of Evidence Offered by a Criminal Defendant to Suggest that Someone Else is Guilty*, 63 Tenn. L. Rev. 917, 984 (1996) (observing third-party culpability evidence creates problem without satisfying solution "because the preliminary question[] the trial judge has to decide . . . is the same basic issue the jury would have to decide if the evidence were admitted, *i.e.*, whether the . . . evidence gives rise to a reasonable doubt that the defendant committed the crime").

*quoting Gibson*, 202 Ariz. 321, ¶ 16, 44 P.3d at 1004. Put another way, if the evidence in question would suggest a reasonable possibility that a person other than the defendant committed the crime, it should be admitted. *Cf. State v. Portillo*, 182 Ariz. 592, 596, 898 P.2d 970, 974 (1995) (approving instruction to jurors that "[i]f . . . you think there is a real possibility that [the defendant] is not guilty, you must give him/her the benefit of the doubt and find him/her not guilty").

¶25 Our courts have found third-party evidence irrelevant when it casts nothing more than suspicion against a class of people, *e.g.*, *Dann*, 205 Ariz. 557, ¶ 36, 74 P.3d at 243, or reveals the bad character or criminal propensities of a person otherwise unconnected to the crime. *E.g.*, *Fulminante*, 161 Ariz. at 252, 778 P.2d at 617; *accord Machado*, 224 Ariz. 343, n.11, 230 P.3d at 1172 n.11. In other words, something more than "a possible ground of suspicion against another" person is required. *Prion*, 203 Ariz. 157, ¶ 21, 52 P.3d at 193.

¶26 Here, however, Alvarez was prepared to offer more than proof that a landscaper with a prior felony conviction had some association with the victim. Indeed, the victim was prepared to testify that the landscaper had been present in the victim's backyard on the morning of the burglary, and his normal duties would have involved his continued presence there for a substantial portion of the time the victim was absent. Because the victim was prepared to testify she had seen the landscaper upon her departure for work, a jury reasonably could have inferred the landscaper was likewise aware that she had departed and, because he had worked at her house on six to eight prior

14

occasions, he presumably knew she was not likely to return anytime soon. Moreover, the landscaper was last seen by the victim in a fenced backyard area which gave ready access to the undisputed point of entry—the backdoor of the victim's house. Finally, the victim would have testified the landscaper never returned to her house in the four years after the burglary.[5] Thus, the defense was prepared to offer evidence of motive (the landscaper's prior felony for a property crime), presence (he was last seen in the backyard near the point of entry), opportunity (he was uniquely aware that the house was unoccupied), and temporal proximity. *See Prion*, 203 Ariz. 157, ¶¶ 19-25, 52 P.3d at 193-94 (finding trial court erred in precluding similar evidence when third-party suspect had "the opportunity and motive" to commit the crime, and was present in pertinent time window).

¶27    While such facts alone might be insufficient to convict the landscaper of the crime, they comfortably cleared the threshold of relevance in assessing who committed the burglary in question. Given that the state itself elicited that the victim departed for work in the morning and returned mid-afternoon, and that the state's own case depended on inferences derived from items appearing and disappearing between her departure and arrival, the factual presentation of the case seems remarkably incomplete in the absence of the evidence related to the landscaper's presence during that time. As we observed in *Machado*, "a jury can . . . be confused in its deliberations by the preclusion of relevant

---

[5]The record suggests he was never again specifically scheduled to return. However, we properly view excluded third-party culpability evidence in the light most favorable to its proponent, even when the evidence has been deemed irrelevant by the trial court. *See Machado*, 224 Ariz. 343, n.1, 230 P.3d at 1164 n.1.

evidence" as much as by the admission of irrelevant evidence. 224 Ariz. 343, ¶ 22, 230 P.3d at 1169. Here, the trial court's ruling only presented jurors with *The Curious Case of the Casual, Well-Hydrated Burglar*, but the competing story Alvarez sought to tell was potentially explanatory as well as exculpatory.

¶28 Notably, the trial court did not articulate the reasons behind its Rule 401 and 403 rulings here, which is troubling given the low threshold under our rules for characterizing evidence as relevant, the jury's presumptive primary role in evaluating the weight to be given evidence, and the minimal court time necessary to present the proffered evidence in this case.[6] In order to characterize that evidence as confusing or misleading, one would have to accept the truth of the state's theory of the case (Alvarez's guilt) as a threshold matter. But we do not assess the admissibility of third-party culpability evidence with the presumption that a defendant is guilty or that the evidence is only relevant if it directly rebuts the state's theory of culpability.

¶29 At times, of course, the state's evidence of a defendant's guilt may be nearly dispositive, making alternative explanations preposterous and unreasonable. Some DNA evidence will surely fall into that category and cause appropriate skepticism of the relevance and probative value of third-party evidence under the *Gibson* and *Prion* standard. Here, for example, had the state found Alvarez's DNA on the jewelry box or on the dresser where the jewelry was located, it would serve little purpose to alert the jury

---

[6]As demonstrated by Alvarez's offer of proof, the entirety of the excluded evidence could have been presented by merely asking several of the state's witnesses a few additional questions.

16

to the existence of alternate or additional suspects. At other times, however, DNA evidence will permit alternative, non-inculpatory explanations, and the existence of such evidence will not inform a court's assessment of the relevance of the third-party evidence offered. I conclude the DNA evidence here falls in the latter category.

¶30 To be sure, the DNA found on the water bottle was substantial circumstantial evidence of guilt. It certainly allowed the jury to draw a reasonable inference that Alvarez had perpetrated the burglary or at least conspired with the person responsible. It was sufficient, in short, to allow a conviction that would withstand a challenge under Rule 20, Ariz. R. Crim. P. *Cf. McGriff*, 7 Ariz. App. at 501, 441 P.2d at 267 (concluding palm print provided sufficient circumstantial evidence of guilt). Yet the DNA evidence, when coupled with the proffered evidence of third-party culpability, also allowed alternative explanations that would not inculpate Alvarez.

¶31 As defense counsel argued in summation, the DNA test established only that Alvarez had drunk from the water bottle. It could not and did not establish where or when he had done so. It did not rule out that Alvarez had shared the water bottle with someone else or that another person had handled or used the bottle for some purpose after Alvarez. Indeed, the presence of a female's DNA on the other bottle demonstrated that at least one other person drank from the bottles and was presumably on hand at some point during their handling.

¶32 Did the female, after departing from an innocent Alvarez, then proceed to act as an accomplice to the landscaper in the burglary with the bottles in tow? Did the

17

landscaper keep the bottles from a prior work site to reuse them? Indeed, the presence of the bottles in the trash can and refrigerator suggests a burglar who was casual rather than urgent in his trespass, which would be consistent with a perpetrator who was confident in knowing the occupant would not soon return, much like the landscaper. And while it would seem odd for a random burglar to encumber himself with one or more water bottles while breaking into a home, it would be a rare landscaper who would fail to bring some water with him to a Tucson work site in August. In short, the landscaper evidence would have provided the jury both a potential alternate suspect in the burglary and a reasonable alternative inference regarding who brought the water bottles into the house.

¶33 Finally, even if one assumes that Alvarez's DNA on the water bottle demonstrates his presence at the scene of the crime, the presence of others, like the landscaper, who might have invited him inside, would raise new questions about whether the fifteen-year-old Alvarez was aware entry had been forced and others intended to steal items from the house. Certainly, that the water bottles were so casually and conspicuously left behind might support an inference that the owners of the water bottles were not aware they occupied a crime scene.

¶34 In sum, Alvarez's DNA on the water bottle was substantial, but not unassailable, evidence of guilt. In that context, evidence of another plausible perpetrator would have raised a number of other potential inferences consistent with Alvarez's innocence. It is the function of the jury rather than the trial court, or this court, to weigh the reasonableness and plausibility of those inferences. Finally, as defense counsel

18

strenuously argued before the trial court, the failure of the state to contact or investigate the landscaper strongly supported the defense argument that the state had simply conducted too little investigation, and presented too little evidence, to be entitled to a conclusion that it had eliminated all reasonable exculpatory inferences.

**¶35** For those reasons, I would hold the proffered evidence was relevant, it was erroneously excluded by the trial court, and the error was not harmless beyond a reasonable doubt. The exclusion of the proffered third-party evidence here led the jury to assess the probative value of the DNA evidence in a different light than if they had known there was a person with a felony record for a property crime present on the victim's property on the morning of the burglary—a person who, because of his job as a landscaper, had ready access to the ultimate point of entry and a unique awareness that the victim had departed for work.

**¶36** I therefore respectfully dissent.

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge