IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,                )
                                     )        2 CA-CR 2008-0156
                    Appellee,        )        DEPARTMENT A
                                     )
            v.                       )        O P I N I O N
                                     )
CALEB QUIXOTE LEWIS,                 )
                                     )
                    Appellant.       )
                                     )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20032646

Honorable John Davis, Judge

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and Kathryn A. Damstra                              Tucson
                                                            Attorneys for Appellee

Isabel G. Garcia, Pima County Legal Defender
  By Joy Athena                                                          Tucson
                                                            Attorneys for Appellant

P E L A N D E R, Judge.

¶1          After a jury trial, appellant Caleb Lewis was convicted of drive-by shooting but

acquitted of aggravated assault.  He appeals from the trial court's restitution order against

him, contending the court erred by ordering him to pay restitution to a victim after he had been acquitted of aggravated assault against her. He also maintains for the first time on appeal that, because evidence at trial suggested there were two shooters, either of whom could have caused the victim's injury, the facts underlying his drive-by shooting conviction do not support the restitution award. Because we find the award factually and legally supported, we affirm the restitution order.

## Background

¶2 We view the facts and all reasonable inferences therefrom in the light most favorable to upholding the trial court's restitution order. *See In re Andrew A.*, 203 Ariz. 585, ¶ 5, 58 P.3d 527, 528 (App. 2002). After Lewis, his brother, and another man were asked to leave a house party, they got into a sport utility vehicle (SUV). As they started to drive away, someone at the party fired shots from the house toward the SUV. Lewis, who was driving, and possibly his brother, who was in the backseat, returned fire by shooting toward the house. The victim, A., was shot in the shoulder, and other bullets hit the front window of the house. A. suffered permanent loss of movement in her shoulder and incurred $12,448.94 in medical expenses.

¶3 Lewis was charged with aggravated assault with a deadly weapon, aggravated assault causing serious physical injury, and drive-by shooting. The jury found him guilty of drive-by shooting, acquitted him of aggravated assault resulting in serious physical injury, and failed to reach a verdict on the charge of aggravated assault with a deadly weapon. Lewis was sentenced to the presumptive term of 10.5 years' imprisonment.

2

**¶4**        At the restitution hearing, Lewis argued he should not have to pay restitution to A. because the jury had acquitted him of aggravated assault resulting in serious physical injury, he had merely "sho[t] a window at the house," and "the jury did not believe he did the shooting to cause the injury to [A.]." The court noted the "issue of restitution is complicated by the facts of trial and the jury verdict" but decided to follow "the authorities cited by the State." Apparently based on those authorities, the court rejected Lewis's argument and found him liable for restitution to A., simply noting she "was injured during the event [on] the night in question." The court ordered Lewis to pay $12,098.94 to A.'s health insurance company and $350 to A. for her medical expenses.[1] This delayed appeal from the restitution order followed. We have jurisdiction pursuant to article VI, § 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033. *See State v. Fancher*, 169 Ariz. 266, 266 n.1, 818 P.2d 251, 251 n.1 (App. 1991); *see also* Ariz. R. Crim. P. 31.3(b) and 32.1(f) (permitting trial court to grant delayed appeal).

## Discussion

**¶5**        Lewis asks us to vacate the restitution order because he "was acquitted of the [aggravated assault] charge that involved the victim" and "his conviction for the drive-by shooting does not make him responsible for the victim's restitution claim under this case's facts." Generally, we review a restitution order for an abuse of discretion. *State v. Slover*,

---

[1]The procedure and timing of events below raise some questions about the superior court's jurisdiction to conduct a restitution hearing and enter a restitution award. Because those jurisdictional issues are case-specific, unlikely to recur, and not worthy of publication, we address and resolve them, sua sponte, in a separate memorandum decision. *See* Ariz. R. Crim. P. 31.26; Ariz. R. Sup. Ct. 111(b), (h).

3

220 Ariz. 239, ¶ 4, 204 P.3d 1088, 1091 (App. 2009); *State v. Reynolds*, 171 Ariz. 678, 681, 832 P.2d 695, 698 (App. 1992).[2] "A trial court abuses its discretion when it misapplies the law or predicates its decision on incorrect legal principles." *State v. Jackson*, 208 Ariz. 56, ¶ 12, 90 P.3d 793, 796 (App. 2004).[3] As noted above, we view the evidence bearing on a restitution claim in the light most favorable to sustaining the court's order. *See Andrew A.*, 203 Ariz. 585, ¶ 5, 58 P.3d at 528; *see also State v. Wilson*, 185 Ariz. 254, 260, 914 P.2d 1346, 1352 (App. 1995) (in reviewing restitution order, appellate court may not "substitute [its] own assessment of the evidence for that of the trial court").

**¶6**        "To preserve and protect victims' rights to justice and due process," Arizona's Constitution entitles crime victims "[t]o receive prompt restitution from the person or persons convicted of the criminal conduct that caused the victim's loss or injury." Ariz. Const. art. II, § 2.1(A)(8). A defendant who has been convicted of a crime shall be ordered "to make restitution to the person who is the victim of the crime . . . in the full amount of the economic

---

[2]Citing *State v. Guadagni*, 218 Ariz. 1, ¶ 13, 178 P.3d 473, 477 (App. 2008), Lewis maintains we should review the trial court's restitution order de novo. That case involved a question of statutory interpretation, which is a question of law. *Id*. To the extent our decision rests on interpretation or application of statutes, our review is de novo. But as for the court's apparent factual determination whether Lewis's criminal conduct directly caused the victim's injuries, we review the order for an abuse of discretion. *See In re Stephanie B.*, 204 Ariz. 466, ¶ 8, 65 P.3d 114, 116 (App. 2003).

[3]As noted earlier, in finding A. had been a victim and ordering restitution, the trial court "followed" the cases the state cited below, two of which were *State v. Booker*, 203 Ariz. 284, 53 P.3d 635 (App. 2002), and *State v. Cisneros*, 190 Ariz. 315, 947 P.2d 889 (App. 1997). As Lewis correctly points out, however, on appeal "the state does not defend the case law relied upon by the trial court, nor could it." Neither case addressed or decided a restitution issue, and *Booker* was depublished by our supreme court in 2003. Therefore, we do not base our decision on either of those cases.

4

loss as determined by the court." A.R.S. § 13-603(C); *see also* A.R.S. § 13-804(A); *State v. Madrid*, 207 Ariz. 296, ¶ 4, 85 P.3d 1054, 1056 (App. 2004).[4]

¶7 A trial court, however, "may impose restitution only on charges for which a defendant has been found guilty, to which he has admitted, or for which he has agreed to pay." *State v. Garcia*, 176 Ariz. 231, 236, 860 P.2d 498, 503 (App. 1993). "A loss is recoverable as restitution if it meets three requirements: (1) the loss must be economic, (2) the loss must be one that the victim would not have incurred but for the criminal conduct, and (3) the criminal conduct must directly cause the economic loss." *Madrid*, 207 Ariz. 296, ¶ 5, 85 P.3d at 1056; *see also* A.R.S. § 13-804(B) (requiring consideration of "all losses caused by the criminal offense or offenses for which the defendant has been convicted"). The state has the burden of proving a restitution claim by a preponderance of the evidence. *In re Stephanie B.*, 204 Ariz. 466, ¶ 15, 65 P.3d 114, 118 (App. 2003).

¶8 Lewis does not dispute the victim's loss was economic. Citing *Garcia*, however, he maintains the trial court erred in ordering him to pay restitution when he was acquitted of the aggravated assault of A. He contends the only charge on which he was convicted, "drive-by shooting[,] does not require that a particular person, or any person, be a target." *See* A.R.S. § 13-1209(A) ("A person commits drive by shooting by intentionally

---

[4]The constitutional definition of "[v]ictim" includes "a person against whom the criminal offense has been committed." Ariz. Const. art. II, § 2.1(C). In prescribing various victims' rights, our legislature has expressed its broad remedial intent, "emphasizing that the constitutional rights of 'innocent persons [who] suffer economic loss' should be fully protected." *Madrid*, 207 Ariz. 296, ¶ 7, 85 P.3d at 1057, *quoting* 1991 Ariz. Sess. Laws, ch. 229, § 2 (alteration in *Madrid*); *see also* A.R.S. § 13-4418 ("This chapter shall be liberally construed to preserve and protect the rights to which victims are entitled.").

discharging a weapon from a motor vehicle at a person, another occupied motor vehicle or an occupied structure."). And, Lewis argues, "[n]othing in the jur[ors]' verdict suggests that they believed [he] fired at a person rather than the house where the party was held."

¶9 As the state points out, however, even a "victimless" crime may support a restitution award when the criminal conduct directly caused the economic damage. *See State v. Guilliams*, 208 Ariz. 48, ¶ 14, 90 P.3d 785, 789 (App. 2004). Rather than the elements of the crime, "the facts underlying the conviction determine whether there are victims of a specific crime." *State v. Guadagni*, 218 Ariz. 1, ¶ 15, 178 P.3d 473, 478 (App. 2008). Thus, although Lewis was acquitted of aggravated assault, he may still be liable for restitution as long as his criminal conduct—the drive-by shooting—directly caused A.'s injuries. *See id*. ¶ 18; *see also State v. Wilkinson*, 202 Ariz. 27, ¶ 7, 39 P.3d 1131, 1133 (2002); *Madrid*, 207 Ariz. 296, ¶ 5, 85 P.3d at 1056. In other words, Lewis's acquittal of aggravated assault against A. does not necessarily absolve him of liability for restitution to her.

¶10 In addition, as the state also notes, the jury might have acquitted Lewis of aggravated assault based on the mens rea required for that offense or as a compromise verdict. *See* A.R.S. §§ 13-1203(A), 13-1204(A)(1); *see also State v. Zakhar*, 105 Ariz. 31, 32-33, 459 P.2d 83, 84-85 (1969) (acquittal of assault charge may have been result of jury compromise). In Arizona, a jury is not required to render consistent verdicts. *Id*.; *see also State v. Adams*, 189 Ariz. 235, 238, 941 P.2d 908, 911 (App. 1997). The jury was neither requested nor required to determine in connection with the drive-by shooting charge whether Lewis had shot merely at the house rather than at a person. *See* § 13-1209(A). But, it is

6

undisputed that A. was injured as a direct result of the shooting from the SUV, regardless of whether Lewis fired the shot that hit her.[5]

**¶11** Nonetheless, a defendant is only liable in restitution "for those damages that flow directly from the defendant's criminal conduct, without the intervention of additional causative factors." *Wilkinson*, 202 Ariz. 27, ¶ 7, 39 P.3d at 1133. In Arizona, the standard for establishing causation on restitution claims is not a strict "but for" standard. *See id*. Rather, it is a "'modified but for standard,'" meaning the government must prove "'that a particular loss would not have occurred but for the conduct underlying the offense of conviction, [and] that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally).'" *Guilliams*, 208 Ariz. 48, ¶ 18, 90 P.3d at 790, *quoting United States v. Vaknin*, 112 F.3d 579, 589-90 (1st Cir. 1997). Whether such a showing has been made is "'a fact-specific'" determination for the trial court. *Id*.

---

[5]Even a driver who fires no weapon can be found guilty as an accomplice to drive-by shooting. *See State v. Baldenegro*, 188 Ariz. 10, 13, 932 P.2d 275, 278 (App. 1996) (jurors could have found defendant guilty as accomplice to drive-by shooting based on his having driven car from which other occupant fired gun); *cf. State v. Garnica*, 209 Ariz. 96, ¶¶ 8, 24, 98 P.3d 207, 208-09, 212-13 (App. 2004) (finding proper factual and legal basis for defendant's accomplice liability despite claim that only his brother, not he, had fired bullet that hit victim); *Riley v. State*, 60 P.3d 204 (Alaska Ct. App. 2002). Although the state did not urge the theory of accomplice liability below and no accomplice instruction was given to the jury, as discussed below, the restitution award against Lewis was supportable even if he merely acted in concert with his brother in causing the victim's injury. Moreover, the trial court was not precluded from ordering him to pay restitution based on the undisputed fact that he had driven the car involved in the drive-by shooting and on the court's implicit finding, clearly supported by the evidence, that Lewis had fired a gun toward people in the house.

¶12 Citing and attempting to distinguish *Guadagni*, Lewis contends the underlying facts in this case "do not support [his] responsibility for the victim's injuries, and in fact, support a conclusion that an intervening event ([his brother's] firing of a weapon) caused [her] injuries." According to Lewis, "[t]he restitution issue boils down to one crucial fact that has not been disputed: there were two shooters involved in the alleged offenses." Therefore, Lewis argues, the state failed to "prove causation" because it "offered no evidence as to which shooter injured the victim." We find several flaws in this analysis and, therefore, reject Lewis's argument.

¶13 In challenging the state's restitution claim below, Lewis did not make the "two shooters" argument he now urges. Consequently, with respect to that ground, he has forfeited review for all but fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607 (2005); *State v. Moreno-Medrano*, 218 Ariz. 349, ¶ 7, 185 P.3d 135, 138 (App. 2008). Lewis has not argued or established that the trial court committed fundamental error in ordering restitution here. Absent any such argument, he "cannot sustain his burden in a fundamental error analysis." *Moreno-Medrano*, 218 Ariz. 349, ¶ 18, 185 P.3d at 140.

¶14 Even assuming Lewis's challenge to the state's restitution claim below adequately preserved a causation argument based on his brother's alleged participation in the drive-by shooting, we find no error, fundamental or otherwise. In determining whether the state carried its burden of establishing its restitution claim by a preponderance of the evidence, the trial court was not constrained by Lewis's acquittal on the aggravated assault

8

charge, on which the state had the burden of proving his guilt beyond a reasonable doubt. *See Stephanie B.*, 204 Ariz. 466, ¶ 15, 65 P.3d at 117-18; *see also* § 13-804(I) (restitution order "may be supported by . . . any evidence previously heard by the [trial] judge during the proceedings"). Nor was a restitution award precluded by the jury's failure to specify the basis for its finding Lewis guilty on the drive-by shooting charge. *Cf. Andrew A.*, 203 Ariz. 585, ¶ 7, 58 P.3d at 528 ("Juvenile can be ordered to pay restitution for losses directly caused by his criminal conduct even where the conduct which caused such losses was not an element for which he was adjudicated delinquent.").

¶15        Viewed in the light most favorable to upholding the restitution award, *see id.* ¶ 5, the record reflects sufficient evidence to support the award here. Not only was there evidence that Lewis possessed a gun and fired it toward people in the house, including the victim, but, more importantly, Lewis was undisputedly in control of the instrumentality of the drive-by shooting—the vehicle from which the shots were fired.[6]

¶16        Thus, based on that evidence and reasonable inferences therefrom, the trial court could reasonably find that Lewis's "criminal conduct . . . directly cause[d] the [victim's] economic loss." *Madrid*, 207 Ariz. 296, ¶ 5, 85 P.3d at 1056. Similarly, the evidence supported a finding that the victim's damages "flow[ed] directly from Lewis's

---

[6]Lewis testified at trial he had not possessed a gun on the night in question. Because the jurors found him guilty of drive-by shooting, however, they obviously did not believe his testimony. *See* § 13-1209(A). Moreover, a witness testified she had seen Lewis with a gun at the party that evening. And Lewis's girlfriend at the time told police detectives Lewis had admitted he and his brother had fired weapons toward people in the house who had shot at them. Finally, the front seat passenger testified that, after hearing shots fired from the house, he had seen Lewis returning fire from the SUV.

criminal conduct, without the intervention of additional causative factors." *Wilkinson*, 202 Ariz. 27, ¶ 7, 39 P.3d at 1133. Based on its independent evaluation of the evidence adduced at trial, *see* § 13-804(I), and applying a preponderance-of-the-evidence standard of proof, the trial court could find "'the causal nexus between [Lewis's criminal] conduct and the [victim's] loss [was] not too attenuated.'" *Guilliams*, 208 Ariz. 48, ¶ 18, 90 P.3d at 790, *quoting Vaknin*, 112 F.3d at 590. We find the court's restitution award both factually and legally supported and not, as Lewis asserts, overly speculative.

¶17        That Lewis's brother might also have participated in the drive-by shooting would not alter our conclusion, even if a bullet from his gun rather than Lewis's actually hit and injured the victim. Under § 13-804(F), multiple defendants are jointly and severally liable for restitution when "more than one defendant is convicted of the offense which caused the loss." That statute does not apply here because Lewis's brother was not a codefendant in this case and apparently was not charged with or convicted of any offense related to A.'s injuries. *Cf. In re Maricopa County Juv. Action No. JV-128676*, 177 Ariz. 352, 355, 868 P.2d 365, 368 (App. 1994) (juvenile who unlawfully entered stolen vehicle not jointly and severally liable for restitution when other juveniles not adjudicated delinquent).

¶18        Section 13-804(F), however, does not preclude a restitution award in situations such as this when either or both of the two participants might have caused the victim's economic loss. Rather, "a defendant may be held responsible for all of the damage or loss caused to a victim where criminal conduct was undertaken in concert with others." *State v. Wells*, 861 P.2d 828, 829 (Kan. Ct. App. 1993) (when unable to determine who inflicted

which injuries on victim, trial court did not abuse discretion in not attempting to apportion restitution among defendant and other assailants); *see also State v. Eno*, 727 A.2d 981, 985 (N.H. 1999) ("where criminal activity is undertaken in concert with others, a defendant may be held responsible for all of the loss caused by the criminal activity"); *cf. Stephanie B.*, 204 Ariz. 466, ¶ 17, 65 P.3d at 118 ("[A] restitution award is not barred because the juvenile has been found not delinquent on a charged offense *so long as* the juvenile is found delinquent of another criminal offense that properly supports the award."); *People v. Fichtner*, 869 P.2d 539, 541, 543 (Colo. 1994) (defendant liable for restitution even though codefendant shot tire because both participated in same criminal acts); *Craft v. State*, 955 So. 2d 384, 385 (Miss. Ct. App. 2006) (joint and several liability for restitution when codefendants acted in concert).

¶19        Finally, we find analogous support in *Adams* for the restitution award here. There, the defendant and some accomplices cashed forged checks at three different bank branches. 189 Ariz. at 236, 941 P.2d at 909. Although the defendant was acquitted of two forgery counts relating to checks cashed at two of the banks, the trial court ordered restitution in the amount of $550, the amount lost by those two banks. *Id*. The defendant challenged the restitution award "because he was acquitted of the charges relating to the bank's monetary loss." *Id*. at 238, 941 P.2d at 911. Rejecting that claim, the court in *Adams* noted that the defendant had been convicted of fraudulent schemes and artifices, that he "had accomplices, and that the bank suffered a $550 economic loss from their scheme." *Id*. at 239, 941 P.2d at 912. Similarly here, the victim's loss "was reasonably related" to Lewis's drive-by shooting, regardless of whether he fired the bullet that hit the victim. *Id*.; *see also State*

11

*v. Dixon*, 216 Ariz. 18, ¶ 11, 162 P.3d 657, 660 (App. 2007) ("We will uphold a restitution award if it bears a reasonable relationship to the loss sustained.").

**Disposition**

¶20        The trial court's restitution order is affirmed.


_____
JOHN PELANDER, Judge

CONCURRING:


_____
JOSEPH W. HOWARD, Chief Judge


_____
PHILIP G. ESPINOSA, Presiding Judge