NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CASSANDRA LOREE MERCER, *Appellant*.

No. 1 CA-CR 14-0285
FILED 1-29-2015

Appeal from the Superior Court in Navajo County
No. S0900CR201300101
The Honorable John N. Lamb, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Emery K. La Barge, Attorney at Law, Snowflake
By Emery K. La Barge
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Peter B. Swann joined.

---

**W I N T H R O P**, Judge:

¶1            A jury convicted Cassandra Loree Mercer ("Appellant") of one count of fraudulent schemes and artifices, and the trial court placed her on probation and ordered her to pay $30,000 restitution to the victim of her crime.  On appeal, Appellant argues the court erred in denying her request for a separate restitution hearing and in entering a restitution order in the full amount requested.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND[1]

¶2            On February 12, 2013, a Navajo County grand jury issued an indictment, charging Appellant with one count of fraudulent schemes and artifices, a class two felony, in violation of Arizona Revised Statutes ("A.R.S.") section 13-2310.[2]  The indictment contained the allegation that, "[o]n or about between February 1st, 2012 and May 30, 2012," Appellant had, "pursuant to a scheme or artifice to defraud, knowingly obtained any benefit by means of false or fraudulent pretenses, representations, promises or material omissions."

¶3            At trial, the State presented the following evidence:   The victim was born in 1993.  When the victim was very young, his mother died.  A resultant medical malpractice lawsuit led to a settlement in which a trust

---

[1]        In general, we view the facts in the light most favorable to sustaining the verdict, and we resolve all reasonable inferences against Appellant.  *See State v. Greene*, 192 Ariz. 431, 436, ¶ 12, 967 P.2d 106, 111 (1998).  Similarly, we view the evidence bearing on a restitution award in the light most favorable to upholding the trial court's order.  *State v. Lewis*, 222 Ariz. 321, 324, ¶ 5, 214 P.3d 409, 412 (App. 2009).

[2]        We cite the current version of all applicable statutes unless changes material to our decision have occurred since the date(s) of the crime.

fund was arranged for the victim and his two older brothers. The fund was set up to begin paying out as each of the boys turned eighteen years of age.

¶4        In the meantime, the victim's family moved from Michigan to Alaska. Appellant met and moved in with the victim's father, had two children with the father, and acted as the victim's de facto stepmother.

¶5        When the victim turned eighteen years of age in September 2011, he began receiving monthly $3000 annuity payments from the trust fund. The victim believed all of the annuity payments were being saved for his anticipated college education.

¶6        At about that same time, the victim began working and sought to cash a paycheck. The victim's bank was closed, and Appellant suggested he could cash his check at her bank. Unbeknownst to the victim, however, Appellant had arranged to set up a joint bank account for her and the victim. One of the documents ultimately presented by Appellant for the victim to sign was an assignment of the victim's trust fund annuity payments to be direct deposited into the joint account. Consequently, the victim's monthly $3000 trust fund payments began to be electronically deposited into the joint account, and Appellant would then transfer the funds into her personal bank account, without the victim's knowledge or consent. The victim did not have access to Appellant's separate account, and Appellant spent the transferred annuity funds for her personal use. In total, between September 2011 and June 2012, Appellant transferred $30,000 of the victim's annuity funds for her personal use.

¶7        The victim's father died unexpectedly in February 2012, after which Appellant and the rest of the family moved to Arizona. The victim eventually realized the trust fund money was going into the joint account and Appellant was siphoning the money from that account, and he arranged to have the remaining incoming trust funds sent to an account in his name only. When Appellant learned of this, she became "hysterical," denied the money she had taken belonged to the victim, kicked the victim out of the house, and "drained" the remainder of the joint account. The victim, accompanied by his attorney, filed a report with the Snowflake-Taylor Police Department, accusing Appellant of transferring funds from the victim's structured annuity trust fund to her personal bank account in Alaska in the amount of $30,000.

¶8        Appellant testified at trial, and acknowledged transferring and using the funds in question from September 2011 through May or June

2012, but claimed she had done so with the victim's permission. She denied any intent to defraud the victim, or to misuse or hide the victim's funds.

¶9 The jury found Appellant guilty as charged. At Appellant's sentencing hearing, the trial court suspended sentencing and placed Appellant on seven years' standard probation. As a condition of probation, the court ordered that Appellant serve twelve months' incarceration in the Navajo County Jail. Appellant requested a separate restitution hearing, but the court implicitly denied her request and ordered her to pay $30,000 restitution to the victim based on the evidence presented at trial.

¶10 Appellant filed a timely notice of appeal. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

## ANALYSIS

¶11 Appellant challenges only the trial court's restitution order, arguing the court erred in denying her request for a separate restitution hearing and in entering a restitution order in the amount of $30,000. We find no error.

¶12 In general, we review a restitution order for an abuse of discretion. *Lewis*, 222 Ariz. at 323-24, ¶ 5, 214 P.3d at 411-12. However, to the extent our decision rests on a legal question, such as the interpretation or application of statutes, our review is *de novo. Id.* at 324 n.2, ¶ 5, 214 P.3d at 412 n.2; *see also Coleman v. Johnsen*, 235 Ariz. 195, 196, ¶ 6, 330 P.3d 952, 953 (2014) (applying *de novo* review to matters involving constitutional law).

¶13 "If a person is convicted of an offense, the court shall require the convicted person to make restitution to the person who is the victim of the crime . . . , in the full amount of the economic loss as determined by the court . . . ." A.R.S. § 13-603(C); *accord Lewis*, 222 Ariz. at 324, ¶ 6, 214 P.3d at 412. "In ordering restitution for economic loss pursuant to § 13-603, subsection C . . . , the court shall consider all losses caused by the criminal offense . . . for which the defendant has been convicted." A.R.S. § 13-804(B). "The restitution order . . . may be supported by evidence or information introduced or submitted to the court before sentencing or any evidence previously heard by the judge during the proceedings." A.R.S. § 13-804(I). The State bears the burden of proving a restitution claim by a preponderance of the evidence. *Lewis*, 222 Ariz. at 324, ¶ 7, 214 P.3d at 412.

¶14 In this case, the State made clear throughout trial its position that Appellant was responsible for the full $30,000 she took from the victim.

In his opening statement, the prosecutor argued Appellant had "breached her position of trust as a stepmother to obtain $30,000 from the victim." The victim later testified that, between September 2011 and June 2012, Appellant had diverted and used $30,000 of his annuity funds. The victim testified he did not make withdrawals from the joint account or use any money from that account to make purchases, nor did he authorize Appellant "to use that trust money to live off of." The prosecutor again argued in his closing argument that Appellant had taken $30,000 from the victim between September 2011 and June 2012.

¶15        Before the sentencing hearing, the probation department issued a presentence report stating the victim had reported to the Snowflake-Taylor Police Department that Appellant had transferred $30,000 from his annuity fund to her personal bank account. The presentence report writer recommended the court order Appellant to pay $30,000 in restitution based on the total amount of the victim's annuity Appellant had transferred to her bank account.

¶16        At the sentencing hearing, the prosecutor argued that, pursuant to § 13-804(I), the court could use evidence previously presented to determine the amount of restitution, and pursuant to A.R.S. § 13-108, because at least one element of the offense was committed in Arizona, the trial court had jurisdiction over the entire crime, including any annuity money taken or spent while Appellant and the victim were in Alaska. The prosecutor maintained that, because evidence was presented the victim did not become aware of the crime until June 2012, the court should award the victim "the full [$]30,000" in restitution.

¶17        Defense counsel argued that, because the jury simply had to find Appellant received "any benefit" under the crime charged, "I don't think we can determine what the jury determined, whether she took the entire [$]30,000 or part of the $30,000." Counsel requested a restitution hearing, arguing the jury had not specifically found she took the entire $30,000, and counsel wanted to "go back through the exhibits" previously admitted and examined at trial. Counsel maintained it was "not clear [from the exhibits] who took the money out," and, because the indictment only included the dates February through May 2012, any money taken by Appellant between September 2011 and January 2012, as well as during June 2012, was "outside the Court here." Counsel then suggested Appellant "would stipulate to no more than $12,000" in restitution based on the four months listed in the indictment.

**¶18**      The court asked the prosecutor what authority the court had to award the full $30,000 because "the crime was only a certain period of time." The prosecutor answered that "the restitution has to flow from the crime, so there has to be a nexus, and clearly there's a nexus here." The prosecutor reiterated his position that, pursuant to § 13-108, because at least one element of the crime had occurred in Arizona, the court had jurisdiction for restitution purposes over the whole crime, and that, pursuant to § 13-804(I), the court could consider any of the documents or other evidence previously presented. The court queried whether it could find that, based on the evidence presented, Appellant had transferred and taken the full $30,000, even though the jury had not been required to make that specific determination, and the prosecutor responded in the affirmative. The court then ordered that Appellant pay restitution to the victim in the amount of $30,000.

**¶19**      We find no error in the trial court's ruling. The court was required to award restitution to the victim for the full economic loss suffered by the victim as a result of Appellant's actions, *see* A.R.S. §§ 13-603(C), -804(B); *State v. Baltzell*, 175 Ariz. 437, 439, 857 P.2d 1291, 1293 (App. 1992); *State v. Steffy*, 173 Ariz. 90, 93, 839 P.2d 1135, 1138 (App. 1992), and the court did so.

**¶20**      Moreover, the evidence presented at trial supported the finding of a clear causal nexus between Appellant's crime and the $30,000 in restitution the court awarded to the victim for his financial loss. *See State v. Morris*, 173 Ariz. 14, 18, 839 P.2d 434, 438 (App. 1992); *see also State v. Lindsley*, 191 Ariz. 195, 197, 953 P.2d 1248, 1250 (App. 1997) (requiring the restitution award to "bear[] a reasonable relationship to the victim's loss" (citations omitted)). Substantial evidence supported the jury's finding that Appellant committed the crime of fraudulent schemes and artifices when she transferred the victim's $3,000 monthly annuity funds to her personal account without the victim's permission and used the money for her benefit.[3] Further, substantial evidence demonstrated that Appellant committed the crime over a ten-month period, from September 2011

---

[3]      Appellant asserts "there is no evidence that the Court independently reviewed the [trial] exhibits," but we presume the trial court considered all relevant evidence in its decision. *See generally State v. Cid*, 181 Ariz. 496, 501, 892 P.2d 216, 221 (App. 1995) ("[A]n appellate court presumes that the trial court considered all relevant mitigating factors in rendering its sentencing decision." (citation omitted)).

through June 2012. Also, despite Appellant's contention on appeal that "no amounts were ever tallied or discussed in testimony," the victim specifically testified Appellant took $30,000 of his annuity funds.[4] Finally, Appellant admitted she used "a lot" of the annuity funds for living expenses and personal use, despite the fact she was not a beneficiary on the trust account, and she acknowledged the victim did not have access to her personal bank account into which she transferred his money. Appellant also admitted she used the transferred funds from September 2011 until late May or June 2012, although she claimed she did so with the victim's permission. But the victim denied authorizing Appellant to use any of the funds from the annuity. Accordingly, the victim's full loss was recoverable through restitution because (1) it was purely economic, (2) the victim would not have incurred the loss but for Appellant's criminal conduct, and (3) Appellant's criminal conduct directly caused the victim's economic loss. *See State v. Madrid*, 207 Ariz. 296, 298, ¶ 5, 85 P.3d 1054, 1056 (App. 2004) (citation omitted); *see also State v. Zierden*, 171 Ariz. 44, 45, 828 P.2d 180, 181 (App. 1992) (stating the trial court has an "affirmative duty" to require a defendant to make full restitution for the economic loss sustained by the victim).

**¶21** Appellant also argues the restitution award was improper because the award "exceed[ed] the dates of the indictment." We find no error on this basis.

**¶22** Although some of the victim's loss occurred while he and Appellant lived in Alaska, Arizona has jurisdiction over an offense that a person commits if "[t]he conduct outside this state constitutes an attempt or conspiracy to commit an offense within this state and an act in furtherance of the attempt or conspiracy occurs within this state." A.R.S. § 13-108(A)(2). Appellant began transferring and using the victim's annuity funds in Alaska in September 2011, and continued to transfer and use the victim's annuity funds after moving to Arizona in February 2012 and through June 2012.

**¶23** Further, Appellant provides no authority, and we find none, for the proposition that restitution must be limited to the loss a victim experiences within the four corners of the indictment – that is, during the

---

[4] Moreover, the trial court certainly could have considered the presentence report writer's recommendation that Appellant pay $30,000 in restitution to the victim based on the total amount of the victim's annuity Appellant had siphoned for her personal benefit. *See State v. Dixon*, 216 Ariz. 18, 21-22, ¶ 13, 162 P.3d 657, 660-61 (App. 2007).

date(s) and place(s) the indictment alleges a crime was committed. Such a proposition would run counter to the requirement that the court award restitution to a victim for the full economic loss suffered by the victim as a result of the defendant's actions, *see* A.R.S. §§ 13-603(C), -804(B), and we see no reason to mechanically limit restitution awards to the dates or amounts specified in the indictment. *See United States v. McMichael*, 699 F.2d 193, 195 (4th Cir. 1983) (upholding a restitution order in an amount greater than the total amount the defendant was accused of embezzling in the indictment); *State v. Fancher*, 169 Ariz. 266, 268, 818 P.2d 251, 253 (App. 1991) (recognizing that "restitution orders in excess of amounts alleged in charging documents on which convictions were based have been affirmed" (citation omitted)); *see also State v. Guilliams*, 208 Ariz. 48, 52, ¶ 14, 90 P.3d 785, 789 (App. 2004) (stating that "the restitution statutes do not require that a specific victim be named in a statute, indictment, or verdict form"); *cf. State v. Delgado*, 174 Ariz. 252, 254, 848 P.2d 337, 339 (App. 1993) (recognizing that "the charging document shall be deemed amended to conform to the evidence adduced at any court proceeding" (quoting Ariz. R. Crim. P. 13.5(b))).[5] We find no error in the trial court's decision to consider the economic loss the victim incurred outside the dates stated in the indictment.

¶24 Finally, Appellant contends her due process rights were violated because the trial court chose to award restitution without holding a separate restitution hearing. We find no violation of Appellant's due process rights.

¶25 Citing *State v. Steffy*, Appellant notes a defendant has a due process right to contest the information on which a trial court's restitution order is based, 173 Ariz. at 93, 839 P.2d at 1138, and she maintains that, in *Steffy*, this court further stated, "Even if the trial court believes it has sufficient evidence to make the necessary findings for a restitution order, due process requires that, upon request, the defendant be given the opportunity to present evidence to contest the award." This quote, however, does not appear in *Steffy* or in any other Arizona court opinion that may be relied on as legal precedent. *See* Ariz. R. Sup. Ct. 111(c). Our research, however, indicates Appellant may have derived this quote from a previous memorandum decision of this court, *State v. Grabinski*, 1 CA-CR

[5] Moreover, the causal connection between Appellant's conduct and the loss of the victim's money was not too attenuated factually or temporally as it occurred over a continuous ten-month time span and involved the same victim, the same bank accounts, and the same annuity funds. *See Guilliams*, 208 Ariz. at 53, ¶ 18, 90 P.3d at 790.

06-0835, 2009 WL 1531020, at *14, ¶ 54 (Ariz. App. June 2, 2009) (mem. decision). Because *Grabinski* is a memorandum decision issued before January 1, 2015, it has no precedential value and may not be cited for persuasive value. *See* Ariz. R. Sup. Ct. 111(c)(1)(C). Moreover, the quote in *Grabinski* cited by Appellant, while referencing *Steffy*, is necessarily limited to the facts of that case, in which this court recognized the possibility restitution had been improperly calculated and concluded the court should have held a restitution hearing after the defendant requested one, given the depth and complexity of the issues raised by the defendant, who was ultimately ordered to pay $159 million in restitution. *See Grabinski*, 1 CA-CR 06-0835, 2009 WL 1531020, at *12-14, ¶¶ 49-55.

**¶26**        As for *Steffy*, on which Appellant relies, this court merely recognized the following, "The amount of a victim's loss is normally determined as part of sentencing, and that is where the objection may be made, or a restitution hearing requested." 173 Ariz. at 93, 839 P.2d at 1138. In *Steffy*, the defendant did not request a restitution hearing, and this court concluded he had waived any right to such a hearing. *Id*. Thus, *Steffy* did not require a separate restitution hearing, provided that a defendant is given the opportunity "to contest the information on which the amount of a restitution order is based." 173 Ariz. at 93, 839 P.2d at 1138 (citing *Fancher*, 169 Ariz. at 267, 818 P.2d at 252). As this court noted in *Fancher*, "[r]estitution is not surrounded by the panoply of protections afforded a defendant at trial. So long as the procedure leading to a restitution award is such that [the] defendant is given the opportunity to contest the information on which the restitution award is based, to present relevant evidence, and to be heard, due process is satisfied." 169 Ariz. at 268, 818 P.2d at 253 (citation omitted).

**¶27**        Here, Appellant's due process rights were not violated because (1) Appellant was given the opportunity to contest the amount of restitution requested by the State at the sentencing hearing, (2) the exhibits Appellant cited as support for her argument at the sentencing hearing had been admitted as evidence at trial, and Appellant had been able to provide testimony and fully cross-examine the State's witnesses regarding those exhibits, and (3) the court heard, considered, and rejected Appellant's legal argument at sentencing before awarding the victim $30,000 in restitution. *See id*. The record was well-developed at trial, and Appellant has identified no further evidence she would have offered at a subsequent hearing. There was no due process violation of Appellant's rights, and the restitution award properly provided for the full economic loss sustained by the victim.

## CONCLUSION

¶28          Because there was no violation of Appellant's due process rights, and because the restitution award provided for the full economic loss sustained by the victim, we affirm the trial court's $30,000 restitution award.

