IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JERONIMO LINARES, *Appellant.*

No. 1 CA-CR 15-0810
FILED 1-10-2017

Appeal from the Superior Court in Maricopa County
No. CR2015-103476-001
The Honorable Michael D. Gordon, Judge

**RESTITUTION ORDER VACATED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Lawrence H. Blieden
*Counsel for Appellant*

## OPINION

Judge Donn Kessler delivered the opinion of the Court, in which Presiding Judge Kenton D. Jones and Judge Randall M. Howe joined.

**K E S S L E R**, Judge:

**¶1** Jeronimo Linares ("Linares") appeals the superior court's order that Linares pay $550 in restitution to the Maricopa County Attorney's Office ("MCAO") arising from his child abuse prosecution and conviction. Linares argues that the court erred in ordering restitution under Arizona Revised Statutes ("A.R.S.") sections 13-603(C) (2016) and 13-804 (2016).[1] For the reasons that follow, we vacate the restitution order.

## FACTUAL AND PROCEDURAL HISTORY

**¶2** A jury found Linares guilty of one count of child abuse, a class four felony. Linares was then sentenced to three years' probation and ordered to pay $550 in restitution.

**¶3** Linares' conviction arose from a preschool employee's noticing bruising on a child's thighs, stomach, arms, and neck. The preschool then notified the Mesa police, and the police determined that the child should undergo a forensic medical exam at the Mesa Family Advocacy Center. At the Advocacy Center, Nurse JB met with the police detective and was informed of the suspected child abuse. JB is an employee at the Phoenix Children's Hospital and conducts forensic examinations as a part of her employment. The MCAO contracts with the Phoenix Children's Hospital to conduct these evaluations at the Advocacy Center for a standard fee of $550 for use in criminal prosecutions.

**¶4** JB conducted a medical forensic examination of the victim. As JB testified, she measured and photographed the bruises and recorded other evidence of trauma. The examination was then documented as a report for the State's investigation. As part of the examination, JB determined that abuse was the likely cause of the bruises. Importantly,

---

[1] We cite to the current versions of statutes unless changes material to this decision have since occurred.

neither JB's testimony at trial nor her report showed that she treated the victim for the bruises or recommended any medical treatment.

¶5        The superior court ruled Linares was obligated to pay $550 as restitution because the costs associated with the forensic examination were "neither purely investigative nor purely for the purposes of medical evaluation." Linares timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21 (2016), 13-4031 (2016), and 13-4033 (2016).

## DISCUSSION

¶6        We review restitution orders for an abuse of discretion. *State v. Lewis*, 222 Ariz. 321, 323, ¶ 5 (App. 2009) (citations omitted). An abuse of discretion occurs if the superior court misapplies the law or legal principles, or makes a decision unsupported by facts or legal policy. *Gorman v. City of Phoenix*, 152 Ariz. 179, 182 (1987) (citation omitted). However, "we view the facts in the light most favorable to affirming the court's findings." *In re Andrew A.*, 203 Ariz. 585, 586, ¶ 5 (App. 2002) (citation omitted). We review questions of statutory interpretation de novo. *Lewis*, 222 Ariz. at 324 n.2, ¶ 5.

¶7        A person convicted of an offense must pay restitution "to the person who is the victim of the crime." A.R.S. § 13-603(C). Restitution is recoverable for a loss which (1) is economic; (2) would not have occurred but for the criminal conduct; and (3) is directly caused by the criminal conduct. *Lewis*, 222 Ariz. at 324, ¶ 7 (citations omitted). However, the defendant is only liable for expenses that "flow directly from the defendant's criminal conduct, without the intervention of additional causative factors." *State v. Wilkinson*, 202 Ariz. 27, 29, ¶ 7 (2002).

¶8        Linares argues that the superior court erred and the MCAO is not entitled to restitution because (1) the $550 it paid to Phoenix Children's Hospital was for an examination that was a routine function of the MCAO in investigating the crime; (2) the MCAO is not a victim of the crime; and (3) the exam was too attenuated from the crime to qualify for restitution.[2]

¶9        Restitution is not available for monetary expenses incurred as part of a routine function or for consequential damages that are too attenuated from the crime. We find the analysis in *State v. Guilliams*, 208 Ariz. 48 (App. 2004), controls this case. In *Guilliams*, the superior court

---

[2]        The parties dispute whether Linares argued in the superior court that the MCAO was not a victim of the crime for purposes of restitution. We need not decide that issue to resolve the appeal.

awarded the Arizona Department of Corrections ("ADOC") restitution for costs incurred to secure the prison after an escape, and for the subsequent investigation of the escaped prisoner. *Id.* at 54, ¶ 19. We held that "costs incurred as a result of damage to or unauthorized use of ADOC property during an escape or escape attempt itself" could be awarded as restitution because they were the "direct costs of that escape." *Id.* at 54, ¶ 21. These costs included security measures and precautions established as an immediate response on the day of the prison escape because they were "extraordinary costs to the prison . . . beyond the normal cost of operating the prison that day." *Id.*

¶10        However, we reversed the remainder of the restitution award, which included costs of conducting interviews, writing reports, collecting evidence, and ADOC travel expenses to catch the escaped prisoner. *Id.* at 54, ¶ 22. Although these costs would not have been incurred but for the criminal act, we held they were largely indistinguishable from "the normal costs of investigating any crime and arresting and capturing the suspect." *Id.* at 55, ¶ 23. We reasoned that "[a]lthough the escape undoubtedly created additional burdens for ADOC personnel, . . . these costs do not represent a measurable *economic* loss to ADOC." *Id.* at 55, ¶ 23. As we explained, the State must prove that the expense would not have occurred but for the criminal conduct and that there is a nexus between the criminal conduct and the expense which is not too attenuated (either factually or temporally). *Id.* at 53, ¶ 18 (citation omitted). The key to the analysis is reasonableness, which is determined on a case by case basis. *Id.* (citation omitted). Thus, we held there was a difference "between extraordinary costs directly resulting from an escape and attenuated costs incurred in investigating an escape that has been successful." *Id.* at 55, ¶ 23. We further noted that awarding costs under a "but for" standard was illogical if it included costs the government would incur as part of its routine functions. *Id.; accord In re J.U.*, 241 Ariz. 839, 844-45, ¶¶ 18-23 (App. 2016) (holding that reimbursing police officers for costs in traveling to court to testify at trial was error because such costs were incurred as part of the police department's routine functions).

¶11        MCAO contracts with the Phoenix Children's Hospital to perform forensic medical evaluations. It reimburses the Phoenix Children's Hospital a flat fee of $550 for these examinations, which are later used in criminal proceedings. JB works as a nurse at the Phoenix Children's Hospital and conducts forensic examinations as a part of her routine job. JB's report notes that the victim did not receive treatment for wound care or other medications. Additionally, JB's discharge instructions only recommended follow-up photographs, that the safety plan be reviewed by

the Arizona Department of Child Safety, and that the child continue care with a primary physician.

¶12        Thus, the record indicates that JB did not provide any medical treatment to the child. Rather, she merely conducted a forensic examination to see if there was evidence of child abuse and later so testified at trial. JB's examination was consistent with the MCAO's investigatory duties as opposed to medical treatment of the victim. Therefore, the court's conclusion that the examination fee was recoverable as restitution because it was both medical and investigative in nature was erroneous. Simply because the MCAO contracted out part of its investigative function to a forensic examiner does not make the costs for such a forensic examination for later use at trial an expense entitling the State to restitution.

¶13        Restitution was improper because the cost of the victim's forensic examination was too attenuated from Linares' crime. As in *Gulliams*, normal, routine costs associated with investigating criminal conduct are too far removed from the crime to entitle the State to restitution for economic loss.

## CONCLUSION

¶14        The superior court erred in ordering $550 in restitution for the MCAO. Accordingly, we vacate the court's restitution order.[3]



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[3]        In reviewing the appellate record in this matter, we note that Linares filed a second motion to extend time to file an opening brief which was not ruled on. Linares filed his opening brief three days after making that motion. The motion is denied as moot.