NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LORENZO MARQUEZ, *Appellant.*

No. 1 CA-CR 16-0757
FILED 10-26-2017

Appeal from the Superior Court in Maricopa County
No. CR 2015-001863-001
The Honorable Alfred M. Fenzel, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By David Simpson
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Lawrence S. Matthew
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Margaret H. Downie joined.

C A M P B E L L, Judge:

¶1　　　　Lorenzo Marquez appeals his conviction and sentence for one count of theft, Ariz. Rev. Stat. ("A.R.S.") § 13-1802, and a portion of the superior court's restitution order. He also asks this court to correct the superior court's sentencing minute entry. We affirm his conviction and sentence and the superior court's restitution order, but correct the sentencing minute entry in accordance with this decision.

## FACTS AND PROCEDURAL BACKGROUND

¶2　　　　A grand jury indicted Marquez on one count of fraudulent schemes and artifices, one count of forgery, and one count of theft.[1] The theft count alleged that on June 28, 2013, Marquez, "without lawful authority, knowingly did control [S.B.'s ("Victim")] and/or [V.S.'s ("Owner")] U.S. funds, of a value of $1,000 or more but less than $2,000, with the intent to deprive [Victim] and [Owner] of such property."

¶3　　　　In June 2013, Victim responded to an internet ad placed by Marquez for the sale of a boat with a blue book value of $14,000. Victim met Marquez at a storage facility where he was storing the boat. After viewing it a few times at the facility, they eventually negotiated a purchase price of $2,500. On June 28, 2013, Victim went to Marquez's house to purchase the boat. Marquez told him he was selling the boat for his friend, Owner, and he would get the title from her to finalize the sale. He gave Victim a bill of sale that already contained Owner's signature as the seller. Victim signed the bill of sale and gave Marquez a $1,500 deposit for the boat. He took possession of the boat and agreed to pay Marquez the remaining balance when he received the title. Upon Victim's request, Marquez wrote Owner's

---

[1] "We construe the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." *State v. Karr*, 221 Ariz. 319, 320 (App. 2008) (citation omitted).

address on Victim's copy of the bill of sale. Marquez agreed to get the title to him "very shortly."

¶4        Marquez did not get Victim the title, and over the next few months continued to make excuses for his failure to get the title from Owner. Victim then lost contact with Marquez because his phone was disconnected. Victim attempted to contact Owner, but discovered Marquez had given him the wrong address. After months of investigation on his own, he found Owner's address, and sent a registered letter to both Owner and Marquez informing them he was suing them in small claims court.

¶5        Owner testified she had not given Marquez permission to sell the boat, she had only asked him to store it. She claimed she discovered Marquez had sold the boat when she received Victim's letter. She subsequently received the boat back. Marquez testified Owner had given him permission to sell the boat, and they agreed he would keep the $1,500 and she would get the remaining $1,000. He admitted he started avoiding Victim and, without tendering the title, kept the $1,500.

¶6        The jury found Marquez not guilty on the fraudulent schemes and artifices and forgery counts. It found him guilty on the theft count, and found that the value of the theft was more than $1,000, but less than $2,000. At sentencing, the superior court suspended the imposition of sentence and placed Marquez on 18 months of probation. The superior court further ordered Marquez to pay Victim $2,462.23 in restitution.

## DISCUSSION

### I. Theft Conviction

¶7        During deliberations, the jury submitted the following question: "Theft charge - specifically is this charge for the boat or for the $1,500?" Following discussion and agreement by both parties, the superior court instructed the jury "you must rely on your collective memory of the evidence and the jury instructions."

¶8        Marquez now argues the superior court provided "no guidance" and gave a "legally inadequate" instruction because it should have told the jury the "theft charge was money . . . not the boat" or given the jury a copy of the indictment. Because Marquez did not raise this objection in the superior court, we review for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). To prevail, Marquez must establish that fundamental error exists and that error caused him prejudice. *Id.* at 567, ¶ 20. Marquez alleges that because of the legally inadequate

instruction, "there is a real possibility" he was convicted of an "uncharged" act, theft of the boat, rather than theft of the $1,500 as reflected in the indictment. We conclude Marquez has failed to demonstrate fundamental error.

**¶9**　　　　The superior court has discretion on whether to give further instructions to the jury on any matter. *State v. Ramirez*, 178 Ariz. 116, 126 (1994); *see also* Ariz. R. Crim. P. 22.3 (stating that if a jury requests additional instruction the court "may" give appropriate additional instructions). "[W]hen a jury asks a judge about a matter on which it has received adequate instruction, the judge may in his or her discretion refuse to answer, or may refer the jury to the earlier instruction." *Ramirez*, 178 Ariz. at 126; *see also State v. Ruiz*, 236 Ariz. 317, 324, ¶ 25 (App. 2014). Here, the final jury instructions correctly instructed the jury, including on the evidence and the elements of the theft offense. *See* A.R.S. §§ 13-1801 to -1802.

**¶10**　　　　Additionally, the final instructions stated the jurors may consider counsel's arguments, not as evidence, but to help them understand the law and evidence. Here, counsel for both parties emphasized in opening statements and closing arguments that the theft charge pertained to the $1,500. For example, in his opening statement defense counsel stated the "theft" charge "[a]lleges that without lawful authority [Marquez] accepted and kept the $1,500 that [Victim] paid toward the purchase of the boat. That one's pretty simple." And in closing, the State argued that as to the theft charge Marquez "received the $1,500 cash from [Victim]. [Marquez] never gave the $1,500 back . . . never gave the $1,500 cash to [Owner]" and never informed her about the sale of the boat.[2]

**¶11**　　　　As reflected in the verdict form, the jury found that the theft was for a value of more than $1,000, but less than $2,000. This finding conformed to the evidence at trial as to the $1,500, not the boat. *See supra* ¶ 3. Marquez argues that "all" evidence regarding the boat also supported a value of more than $1,000 and less than $2,000, but this argument is not supported by the record. In addition to testimony of a blue book value of

---

　　　　[2] Marquez contends that the State's arguments were confusing because the State emphasized that the case against Marquez was for the sale of a boat. The portions of the transcript cited by Marquez demonstrate that the State emphasized that the case was about the sale of a boat when it was distinguishing between the charges in this case versus a loan Owner made to Marquez, which was not a part of this case.

$14,000 and the agreed purchase price of $2,500, Owner testified that she had purchased the sailboat at an auction for $4,500 and Marquez testified he believed the value was about $5,000. Finally, the clerk read the indictment at the start of the trial, which stated that the theft charge involved the theft of U.S. funds. The superior court was not required to give the jury a copy of the indictment. *See* Ariz. R. Crim. P. 22.2 (upon deliberation jury shall take forms of verdict, copies of written or recorded instructions, jurors' notes, and tangible evidence as court shall direct in its discretion).

**¶12**        Given the adequacy of the superior court's instruction following the jury question, Marquez's contention that the jury "may" have convicted him of an offense that he was not indicted for is speculative and fails to establish fundamental error. *See State v. Bass*, 198 Ariz. 571, 576-77, ¶¶ 15-18 (2000) (any confusion jury might have had following oral instruction was remedied by written instruction; absent supporting evidence, mere speculation of confusion insufficient to support conclusion jury was confused). Accordingly, the superior court did not err in instructing the jury to the instructions and to rely on its collective memory of the evidence.[3]

## II. Restitution Order

**¶13**        Marquez argues the superior court committed fundamental error because its restitution order impermissibly included restitution for "consequential damages" — Victim's boat storage fees. Marquez did not raise this objection in the superior court, therefore, we review for fundamental error. *Henderson*, 210 Ariz. at 567, ¶ 19.

**¶14**        We view the evidence in the light most favorable to sustaining the superior court's restitution order. *State v. Lewis*, 222 Ariz. 321, 323, ¶ 2 (App. 2009). Following Marquez's conviction, the superior court was required to order restitution to the Victim "in the full amount of the economic loss" as determined by the court. A.R.S. § 13-603(C). Restitution is appropriate only if: the loss is economic, the victim would not have incurred the loss but for the defendant's criminal offense, and the criminal conduct directly caused the economic loss. *State v. Wilkinson*, 202 Ariz. 27, 29, ¶ 7 (2002). When a loss "results from the concurrence of some causal event other than the defendant's criminal conduct, the loss is indirect and

---

[3] Marquez argues that "if" he was convicted for the theft of the boat then the restitution order is illegal since the victim would be Owner, not Victim. Because we find no fundamental error, we reject this argument.

consequential and cannot qualify for restitution under Arizona's statutes." *Id.* (citation omitted). The State must prove a claim for restitution by a preponderance of evidence. *Lewis*, 222 Ariz. at 324, ¶ 7.

¶15            Here, the superior court ordered Marquez to pay Victim $2,462.23 in restitution. This amount includes the $1,500 paid for the boat and $962.23 Victim paid in fees to store the boat. Marquez argues the boat storage fees are consequential because the theft occurred when he "decided to walk away," as demonstrated by his acquittal on the forgery and schemes and artifices counts. He asserts Victim's boat storage fees are too attenuated because they were incurred before Marquez walked away, and were caused by Owner's "reneging on the sale of the boat" by not giving him the title. We reject this argument.

¶16            The State was required to prove that Victim's boat storage fees "would not have occurred but for the conduct underlying the offense of conviction, [and] that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally)." *Lewis*, 222 Ariz. at 325, ¶ 11 (citations omitted). Whether the State has met this burden requires the superior court to make a fact-specific determination. *Id.* Marquez's acquittal on the other counts in no way constrained the superior court's consideration about whether the State met this burden. *See id.* The record here shows that the superior court did not err in ordering Marquez to pay boat storage fees—Marquez took Victim's money, gave him possession of the boat, told Victim he would tender title shortly, then continued to make excuses and failed to do so. *See supra* ¶¶ 3-4. Based on these facts, we do not find the connection between the storage fees and Marquez's theft too attenuated. *See, e.g., In re William L.*, 211 Ariz. 236, 239, ¶ 12 (App. 2005) (to ensure a victim is made whole, the trial court has broad discretion in setting the restitution amount based on the facts of the case, though it may not order restitution that would make the victim more than whole). Accordingly, the superior court did not err in ordering restitution for Victim's boat storage fees.

**III. Discrepancy Between Sentencing Hearing and Minute Entry**

¶17            Marquez argues, and the State agrees, that this court should correct the sentencing minute entry because, per oral pronouncement at sentencing, the court stated the offense would be a class 6 "undesignated" offense, but the sentencing minute entry designates the offense a class 6 "felony."

¶18 Under A.R.S. § 13-1802(G), theft of property with a value of $1,000 or more but less than $2,000 is a class 6 felony. The superior court had discretion, however, to leave the offense undesignated contingent upon Marquez's completion of probation. *See* A.R.S. § 13-604(A) (court may order probation and "refrain from designating [any non-dangerous class 6 felony] offense as a felony or misdemeanor until the probation is terminated"). Here, the superior court ordered probation and orally stated Marquez was "guilty of theft under Count 3, a Class 6 undesignated offense." "When a discrepancy between the trial court's oral pronouncement of a sentence and the written minute entry can be clearly resolved by looking at the record, the [o]ral pronouncement in open court controls over the minute entry." *State v. Ovante*, 231 Ariz. 180, 188, ¶ 38 (2013) (citation omitted). When, as here, the record clearly identifies the intended sentence, this court may correct the sentencing minute entry. *Id.* Accordingly, we correct the sentencing minute entry to state that count three is a class 6 undesignated offense.

## CONCLUSION

¶19 For the foregoing reasons, we affirm Marquez's conviction and sentence, and the superior court's restitution order. We also correct the superior court's sentencing minute entry in accordance with this decision.

